## MARGARET SWOBODA, Respondent, v. LOUIS S. NOWAK and JACOB NOWAK, Appellants.

St. Louis Court of Appeals. Opinion Filed November 6, 1923.

1. **NEGOTIABLE INSTRUMENTS: Duress: Threats of Criminal Prosecution: Evidence: Question for the Jury.** In an action on a promissory note, evidence that p'aintiff and another conspired to extort money from the defendants by threatening to prosecute the minor defendant, and that the note in suit was obtained by such threats of this character as to constitute duress, *held* that while there was evidence tending to support such affirmative defense, the court could not have directed a verdict for defendants on the ground that such defense was conclusively established.

2. **INSTRUCTIONS: Infants: Torts: Instruction Not Erroneous as Assuming Liability of Father for Torts of Minor Son.** In an action against a father and his minor son on a promissory note given as damages for defamatory remarks made by the son, an instruction *held* not erroneous as assuming that the father was liable for the torts of his minor son, as the essential facts required to be found sufficed to warrant a verdict against the father on the theory that there was a valid consideration for the execution of the note by him, and the further fact that the instruction also required the jury to find that he was the father of his codefendant, and that the latter was a minor, which facts were undisputed, cannot be regarded as prejudicial to the defendant father.

3. ———: **Error in Plaintiff's Instruction Purporting to Cover Whole Case, etc.: Cured by Instructions Given at Defendants' Request.** An error in the failure of an instruction given on behalf of plaintiff purporting to cover the whole case and direct a verdict without requiring a finding on the affirmative defense pleaded, *held* such error was cured by instructions given at defendants' request, wherein the defense relied upon was fully put to the jury.

4. ———: **Instruction Abstractly Defining Consideration: Not Error.** In an action on a promissory note, an instruction relating to the necessity of a consideration, which concluded with a paragraph defining the term "consideration" as a "benefit to the party promising, or a loss detriment to the party to whom the promise is made" *held* not erroneous as a mere abstract proposition of law not applied in any way to the facts of the case, as the word "con-

sideration" was used in the early part of the instruction and there was no impropriety in the court's action in defining the term.

5. ———: Infants: Torts: Instruction on Liability of Infant on Note Given in Settlement of Tort: Properly Denied. In an action on a promissory note given by a father and his minor son as damages for defamatory remarks made by the son, an instruction that if the jury found that the defendant's son was a minor under the age of twenty-one years at the time of the execution of the note sued on, there could be no recovery against him, was properly refused, an infant being liable for his torts.

6. INFANTS: Contracts: Torts: Liability: Rule. While the general rule applicable to the contracts of an infant is that he is not liable thereon, the general rule, on the other hand, is that an infant is liable for his torts; the latter rule being taken with the qualification that an infant is not liable for a tort which involves an element necessarily wanting in the case of infancy.

7. ———: ———: ———: Defamatory Statements Concerning Chastity: Liability. An infant, nineteen years old, had reached such age as to render him responsible for his tort consisting of defamatory remarks concerning the chastity of a female.

8. ———: ———: ———: Negotiable Instruments: Note Executed in Infancy in Settlement of Tort: Liability. While ordinarily an infant is not liable upon a note executed by him during infancy, unless by ratification after he reaches his majority, yet, since the law makes the infant liable for his torts, he may be held liable in an action upon his note given in settlement of a tort, so long as the consideration for the note is open to inquiry, in like manner as he would have been liable on the original cause of action.

9. INSTRUCTIONS: Presumptions: Instruction on Presumption Note was Given for Lawful Purpose: Evidence Pro and Con: Error. In an action on a promissory note, where evidence had been adduced *pro* and *con*, as to the character of the consideration of the note, it was error to instruct the jury that the "law presumes the note sued on was given for lawful purpose, and it devolves on defendants to show by the preponderance of the ·evidence that it was given for an unlawful purpose before they are entitled to a verdict;" since such presumption, in so far as it existed in favor of this note, could operate merely by way of coming to plaintiff's aid to make a prima-facie case, and when the facts all came in before the jury, the presumption had no further procedural purpose to serve.

10. NEGOTIABLE INSTRUMENTS: Threats of Criminal Prosecution: Duress: Continuing Duress: Effect. Threats of a criminal prosecu-

tion made to procure the execution of a note, may constitute duress, not only when made, but so long as they may continue to operate upon the mind of the party threatened, affecting his free will and agency, and may operate to invalidate a note though it was not executed until the day after the threats were made.

11. ——: ——: ——: Contracts: Threats Against Infant May Constitute Duress as to Near Relative. Threats to criminally prosecute an infant may constitute duress as to his father or other near relative.

12. INSTRUCTIONS: Error Against Defendant: Uninvited: Not Waived by Further Minimizing Request. In an action on a promissory note where evidence had been adduced, *pro* and *con*, as to the character of the consideration for the note, and the court erroneously instructed the jury that the law presumes that the note sued on was given for a lawful purpose, defendants, by requesting an instruction, which the court gave, tending to minimize the effect of the erroneous instruction, did not invite the error and thus waived the right to complain, thereof on appeal.

13. INFANTS: Negotiable Instruments: Prima-facie Infant Not Liable on Note Given During Infancy: No Presumption. In an action on a promissory note where the infancy of a defendant stood admitted by plaintiff's reply, since prima facie, an infant is not liable on a note given during infancy, no presumption could attend the note as against such infant defendant.

Appeal from the Circuit Court of Franklin County.—
*Hon. R. A. Bruer,* Judge.

REVERSED AND REMANDED.

*Cole & Jenny, Walter Wehrle* and *James Booth* for appellants.

(1) The trial court erred in refusing to give to the jury defendants' instruction E, offered at the close of all the evidence in the case. This instruction was a peremptory one to find for the defendants and ought to have been given. International Harvester Co. v. Spires, 223 S. W. 799; Trust Co. v. Begley, 252 S. W. 76. (2) The court erred in giving to the jury, at the request of plaintiff, her instruction No. 4. This instruction

was erroneous because it told the jury that the law presumed that the note was given for a lawful purpose. There was evidence in the case tending to prove that the note was obtained by threats, duress and fraud, and present such evidence it was manifest error to give this instruction. Haycraft v. Grigsby, 88 Mo. App. 354. (3) It was error for the court to give to the jury plaintiff's instruction No. 1. This instruction was erroneous because it improperly assumed that the father was liable for the torts of his minor son. Such is not the law in Missouri. Basset v. Riley, 131 Mo. App. 676; 29 Cyc. 1665; Needles v. Burk, 81 Mo. 569; Paul v. Hummell, 43 Mo. 119; Charlton v. Jackson, 183 Mo. App. 619. This instruction was erroneous for the further reason that it purported to cover all the evidence in the case and direct a verdict for plaintiff, without requiring any finding on the affirmative defense pleaded. Maack v. Scheider, 57 Mo. App. 431; Cardner v. Primm, 69 Mo. App. 527; Union Packing Co. v. Mertens, 150 Mo. App. 585. The court erred in giving to the jury instruction No. 3, and especially in that part of the instruction defining "consideration as a benefit to the party promising or a loss or detriment to the party to whom the promise is made." This was a mere abstract proposition of law not applied in any way to the facts and its giving was clearly erroneous. (4) The instructions given by the court were inconsistent, contradictory and improper, and their giving was error. See authorities under Point 3. (5) The court erred in refusing to give the jury defendants' instruction D, to the effect that if defendant, Louis Nowak, was a minor at the time of giving said note there could be no recovery against him.

*Fred H. Kasmann* and *Jesse M. Owen* for respondent.

(1) Whether or not the note sued on was obtained by duress was fairly presented to the jury under proper instructions. The evidence amply warranted the jury in finding the note was given in settlement of a tort of

defendant Louis S. Nowak in which he grievously sland-
ered the plaintiff. The finding of the jury for plaintiff,
being supported by substantial evidence, will not be
disturbed by this court. The weight and sufficiency of
the evidence belongs exclusively to the jury. Townsend
v. Schaden, 275 Mo. 239 (and citations); Brown v. Quer-
cus Lumber Co., 202 Mo. App. 582; Hanheide v. Supreme
Tribe of Ben Hur, 223 S. W. 688. (2) There was evi-
dence that the note in suit was given in settlement of a
tort, committed by defendant Louis S. Nowak, which,
if true, would be for a lawful purpose; also evidence that
the note was given to stifle a criminal prosecution against
Louis S. Nowak, which, if true, would be for an unlaw-
ful purpose, on the part of both plaintiff and defendants.
Under such evidence the court did not err in instruct-
ing the jury that in the giving and taking of the note,
the law presumed they all acted lawfully, and not crim-
inally. When plaintiff's instruction No. 4, is considered
with instruction No. F, drawn on the same theory by
appellant, there was no error that appellant can com-
plain of. A party cannot complain of an instruction
in harmony with the one requested by him. Thorpe v.
Mo. Pac. Ry. Co., 89 Mo. 650; Fannelle v. Farmers Mu-
tual Fire Ins. Co., 66 Mo. App. 165, 166; Bauer Grocery
Co. v. Smith, 74 Mo. App. 424; Lange v. Railroad, 208
Mo. 475. (3) (a) We do not claim the father is
liable for the torts of the minor son, as a matter of law.
However, where he voluntarily in writing contracts to
pay an agreed sum in settlement of damages growing
out of such minor's torts, there is sufficient considera-
tion to bind the contract. In this case, whether or not
the father voluntarily signed the note was submitted to
the jury, and their finding against him settles that issue.
(b) While instruction No. 1 failed to take into con-
sideration the affirmative defense pleaded, the failure
was cured by instruction number 3 of plaintiff, and
number A and F given at the instance of appellant. In-
structions in a case are to be taken as a whole, and a

single instruction need not cover the whole case. Blies-
ner v. Distilling Co., 174 Mo. App. 150 and 151; Meiley
v. Railroad, 215 Mo. 589; Lange v. Railroad, 208 Mo.
477; Hughes v. Railroad, 127 Mo. 452; Meadows v. Life
Ins. Co., 129 Mo. 97; Owens v. Railroad, 95 Mo. 181;
Jackson & Co. v. Western Union Tel. Co., 174 Mo. App.
70; Wright v. Mining Co., 163 Mo. App. 536; Johnson
v. Railroad, 150 Mo. App. 323. The same doctrine was
announced by this court in the case of Grote v. Huss-
man, 204 Mo. App. 477 (and citations). (c) Appellant
complains of instruction number 3. This instruction
was drawn by plaintiff embodying the theory of the af-
firmative defense pleaded, copying a portion of the an-
swer, and telling the jury, in effect, if appellants proved
those allegations, they were entitled to a verdict. The
word "consideration," being an unusual word, the court
did not err in defining it for the jury. Int. Harvester
Co. v. Spires, 223 S. W. 803. Even if it were unneces-
sary to define, the definition being correct, could not have
misled the jury to the prejudice of appellants. Er-
rors to avail appellant must have been material and
prejudicial. Keen v. Schnedler, 92 Mo. 516; Banstan
v. Young, 152 Mo. 317. (4) As an infant is liable for
his tort, he is liable upon his note given in settlement of
a tort, so long as the consideration of the note is open
to inquiry to the same extent as he would have been
liable on the original cause of action. 22 Cyc. page 588;
Ray v. Tubbs, 50 Vt. 688. (5) The note of an infant
will still be binding on the surety or guarantor, even
though by the plea of infancy, the maker should be re-
lieved by responsibility thereon. Baker v. Kennett, 54
Mo. 92; Schouler, Domestic Relations, page 535; Frazier
v. Massey, 14 Ind. 382.

ALLEN, P. J.—This is an action upon a promissory
note for the sum of $200 executed by the defendants,
Jacob Nowak and Louis Nowak, father and son, on Oc-
tober 5, 1921, payable to the order of the plaintiff, Mar-

garet Swoboda, three months after the date thereof. The trial, before the court and a jury, resulted in a verdict and judgment for plaintiff for the amount of the note and interest, and the defendants have appealed·

The petition is in the usual form. The answer admits the execution of the note, but pleads that at the time of the execution thereof defendants were not indebted to plaintiff in any sum; that plaintiff and members of her family claimed that the defendant Louis S. Nowak had made certain derogatory remarks concerning plaintiff and one Cecelia Schlitt and threatened that they would "bring a State case" against these defendants and would send defendant Louis Nowak to the reform school and that defendant Jacob Nowak would lose both of his farms. And defendants alleged that, being cowed, frightened and intimidated by said threats, they executed the note sued upon; that the note is without consideration, was procured by duress and is void. And the defendant Louis Nowak pleads that at the time of the making of the note he was an infant under the age of twenty-one years.

The reply admits that defendant Louis Nowak is an infant, and denies generally the other allegations of the petition.

Plaintiff introduced the note in evidence and rested.

In defense the defendant Louis Nowak testified that he was then nineteen years of age, and that he and his father signed this note at the office of a notary public in Washington, Missouri; that on the night prior to the execution thereof, upon the demand of plaintiff and members of her family, he and his father and mother went to the home of plaintiff's parents where were present plaintiff and one Cecelia Schlitt, both young women, and members of their respective families; that plaintiff accused this defendant of having made a slanderous statement about her to Cecelia Schlitt, demanded an apology and money damages, and said that if he did not want to settle it that way she would sue him "on State's case for $2000," which would probably take both his father's

farms; that defendant denied having made any such statement about plaintiff, but plaintiff said that she did not believe him; that plaintiff's father repeated what plaintiff had previously said about suing on state's case; and that Cecilia Schlitt and her mother took part in the conversation saying that they demanded that money be paid to them. And the witness testified that his father therefore said that it would be better to settle the matter and suggested a meeting on the following day in Washington, Missouri, and that on the following day the defendants went to the office of one Thais, a notary in Washington, where they executed the note in suit, defendant Louis Nowak signing also the following statement which was introduced in evidence by defendants, viz.:

"I, Louis Nowak, hereby confess and declare that all indecent remarks and slanderous talk I have said about Miss Margaret Swoboda and Miss Cecelia Schlitt was solely made up by myself and is absolutely untrue and without any foundation whatsoever. I hereby apologize to said Miss Margaret Swoboda and Miss Cecelia Schlitt for everything I have said about them, and promise upon my name and honor never to say it again."

Defendant Louis Nowak further testified that he was not told what "these girls" understood that he had said about them, and that he was frightened when he signed the note and the statement; and on cross-examination he denied that he had been guilty of improper conduct toward Cecelia Schlitt or that he had made to her the slanderous statement as to plaintiff concerning which Cecelia Schlitt subsequently testified, and denied having admitted on the evening prior to the execution of the note that he had made such statement.

Defendant Jacob Nowak testified that at the meeting at the Swoboda home plaintiff and members of her family threatened to have his son arrested and said that if the defendants did not want to settle the matter for $200 plaintiff's father would make a State's case out of it; and that thereupon he and his son agreed to execute the note and did so on the following day.

The testimony of the wife of defendant Jacob Nowak is to the same general effect as that of defendants concerning what occurred at the Swoboda home.

In rebuttal Cecelia Schlitt testified for plaintiff. Her testimony is to the effect that one evening in the summer prior to the execution of the note she saw defendant Louis Nowak at a party; that he asked her to walk out with him to get a drink, which she did, whereupon he undertook to take liberties with her person and made an indecent proposal to her; and that when she spurned him, he said: "Why that is nothing, I have done it with Margaret Swoboda." And the witness testified that she subsequently informed this plaintiff of what occurred upon that occasion. She further testified that at the meeting on the evening prior to the execution of the note defendant Louis Nowak at first denied having made such statement concerning plaintiff, but subsequently, being urged by his father to admit it if he had done so, said: "I will take this to my soul that I have said it." And she said that defendant Jacob Nowak said he would "pay it and settle it all in a quiet way," and defendant Louis Nowak agreed to sign a retraction; and that on the following day, in the notary's office, defendant Jacob Nowak said that he had no money but would sign a note if that was satisfactory.

On cross-examination she said, in substance, that she and plaintiff claimed that the defendants were liable to them for money damages, and that they were seeking to collect the same. She denied that anything was said about bringing a criminal prosecution against Louis, but said that she wanted Louis' father to know that she knew that his conduct amounted to a criminal offense.

Plaintiff testified that having been told by Cecelia Schlitt of the statement said to have been made concerning her by defendant Louis Nowak, she met the latter at a picnic, charged him therewith and demanded that he retract the same, but refused to do so saying that he was a minor and plaintiff couldn't hurt him. Her testimony as to what occurred at the meeting at the home

of her parents is to the same effect as that of Cecelia Schlitt; that nothing was said as to sending Louis to the reform school or prosecuting him, and that no threats were made at the office of the notary. Her testimony shows that about a month after the execution of the note defendants demanded its return. On cross-examination she said that she and Cecelia Schlitt had agreed that they "would let the old man (Jacob Nowak) know that the boy had been guilty of a criminal offense," and that she might prosecute him for it; that she knew that what Louis had done was against the law and that she could have him arrested and prosecuted.

We need not refer to the testimony of plaintiff's father except to say that he testified positively that at the meeting at the Swoboda home nothing was said about bringing a State's case against Jacob Nowak, and that nothing was said about sending Louis to the reform school or prosecuting him; though the witness said that he knew that "if Louis had done the things that these girls had said he did that he had committed a crime."

The testimony of plaintiff's brother, George Swoboda, corroborated that of plaintiff as to what occurred at the picnic mentioned above. And his testimony, as well as that of witnesses for plaintiff other than those mentioned above is to the effect that at the meeting at the Swoboda home nothing was said about any criminal prosecution; that the meeting was for the purpose of insisting upon the payment of money damages to this plaintiff and to Cecelia Schlitt.

I.

At the close of all the evidence in the case defendants requested an instruction peremptorily directing a verdict for them which was refused, and such refusal is assigned as error here. It is argued, in substance, that from the evidence as a whole the conclusion is irresistible that plaintiff and Cecelia Schlitt conspired to extort money from the defendants by threatening to prosecute the minor defendant, and that the note in suit was ob-

tained by such threats of this character as to constitute duress. While there was evidence tending to support the affirmative defense, we think it too plain for extended discussion that the court could not with propriety have directed a verdict for defendants on the ground that such defense was conclusively established.

## II.

The giving of plaintiff's instruction No. 1 is assigned as error. This instruction is as follows:

"The court instructs the jury that if you believe and find from the evidence that on or about the 5th day of October, 1921, defendant, Louis Nowak, told Cecelia Schlitt that he, the said Louis S. Nowak, had had sexual intercourse with plaintiff and that said statement was untrue, then and there accrued to plaintiff a cause of action for damages against Louis S. Nowak for and on account of said defamatory statement; and the court further instructs the jury that if you believe and find from the evidence that defendant, Jacob Nowak, is the father of Louis S. Nowak and that the said Louis S. Nowak is a minor under the age of twenty-one years, and that the said Jacob Nowak agreed with plaintiff to pay her the sum of two hundred dollars in settlement of her damages resulting from said defamatory charges made by defendant, Louis S. Nowak, and that thereafter, in pursuance of said agreement, the note in suit was executed by both defendants and delivered to plaintiff, you will find the issues for the plaintiff in the sum of two hundred dollars with interest at the rate of six per cent per annum from October 5, 1921, against both defendants."

The first complaint of this instruction is that it erroneously assumes that Jacob Nowak, the father, is liable for the tort of his co-defendant, his minor son. But it is obvious, we think, that this instruction does not proceed upon the theory that the father is liable for the torts of his minor son. The essential facts thereby required to be found sufficed to warrant a verdict against

defendant Jacob Nowak on the theory that there was a valid consideration for the execution of the note by him. And the fact that the instruction also required the jury to find that he was the father of his co-defendant and that the latter was a minor (which facts were undisputed) cannot be regarded as prejudicial to defendant Jacob Nowak.

This instruction is further attacked on the ground that it purports to cover the whole case and directs a verdict without requiring a finding on the affirmative defense pleaded. As to this we need only say that the defense relied upon was fully put to the jury by instructions given at defendant's request. Where the plaintiff's instruction, though purporting to cover the whole case and directing a verdict, omits some feature *which is not an element of his cause of action but is a matter of affirmative defense pleaded,* such omission may be cured by an instruction or instructions for the defendant submitting such feature. See State ex rel. Jenkins v. Trimble, 291 Mo. 227, 236 S. W. 651, a recent decision of the Supreme Court en Banc, where the earlier authorities are discussed at some length.

### III.

Plaintiff's instruction No. 3 is as follows:

"The court instructs the jury that plaintiff is entitled to a verdict for the amount sued for, unless you find and believe from the preponderance of the evidence that there was no consideration for the note sued for or that the plaintiff and members of her family threatened they would bring a State's case against defendants, and that defendants were cowed, frightened and intimidated thereby and executed said note solely because of such threats and intimidations.

"And the court further instructs the jury that by 'consideration' is meant 'a benefit to the party promising or a loss detriment to the party to whom the promise is made.'"

The only complaint made of this instruction is that the concluding sentence thereof, defining what is meant by the term."consideration," is a mere abstract proposition of law, not applied in any way to the facts of the case, and constituted error. We think that this assignment is without merit. The word "consideration" was used in the early part of the instruction, and there was no impropriety in the court's action in defining the term. There is no contention that the definition thereof is in any wise incorrect.

## IV.

It is said that the court erred in refusing an instruction offered by the defendant Louis Nowak (instruction No. D), to the effect that if the jury found that said defendant was a minor, under the age of twenty-one years at the time of the execution of the note sued on, there could be no recovery against him. We think that the court did not err in refusing this instruction. It is well settled that, in general, an infant is liable for his torts. While the general rule applicable to the contracts of an infant is that he is not liable thereon, the general rule, on the other hand, is that an infant is liable for his torts; the latter rule being taken with the qualifications that an infant is not liable for a tort which involves an element necessarily wanting in the case of infancy. In 14 R. C. L., p. 260, sec. 36, touching this matter, it is said:

"Thus in the case of slander malice is a necessary ingredient in the wrong. But the law presumes that an infant under the age of seven years is not *doli capax.* It is obvious, therefore, that in the case of slander an infant cannot be held liable for his tort until he arrives at that age, or acquires that capacity which renders him morally responsible for his actions."

In the instant case it cannot be doubted that the minor defendant had reached such age as to render him responsible for a tort of the character here involved. And that he was liable for such tort, if committed, cannot be doubted. [Fears v. Riley, 148 Mo. 49, 49 S. W. 836; 31

C. J. 1090; 22 Cyc. 618 et seq; 14 R. C. L. 259 et seq.] And while ordinarily an infant is not liable upon a note executed by him during infancy, unless by ratification after he reaches his majority, it has been held that, since the law makes the infant liable for his torts, he may be held liable in an action upon his note given in settlement of a tort, so long as the consideration for the note is open to inquiry, in like manner as he would have been liable on the original cause of action. [See Ray v. Tubbs, 50 Vt. 688; 14 R. C. L., p. 254, sec. 32; 31 C. J. 1083; 22 Cyc. 588.] And this view we think is sound.

## V.

Complaint is made of plaintiff's instruction No. 4, which is as follows:

"The court instructs the jury that the law presumes the note sued on was given for lawful purpose, and it devolves on defendants to show by the preponderance of the evidence that it was given for an unlawful purpose, before they are entitled to a verdict in this case."

The attack upon this instruction is that when evidence had been adduced, *pro* and *con*, as to the character of the consideration for the note, as shown above, then any presumption of a valid and lawful consideration disappeared from the case; and that it was error to refer to such presumption in submitting the case to the jury. This argument is indeed sound. In so far as any presumption of this character existed in favor of this note, it could operate merely by way of coming to plaintiff's aid to make a prima-facie case. When the facts all came in before the jury such presumption had no further procedural purpose to serve, and it was error to throw the same into the scales in favor of plaintiff in submitting the case to the jury. [See Griffith v. Continental Casualty Co., 235 S. W. 83; Brunswick v. Insurance Co., 278 Mo. 154, 213 S. W. 50; 7 A. L. R. 1213; Prentiss v. Illinois Life Ins. Co., 225 S. W. 695; State v. Swarens, 241 S. W. 935; State v. Finkelstein, 191 S. W. 1002; Grigsby v. Haycraft, 88 Mo. App. 354, l. c. 362.] In the case last cited it is said, by GOODE, J.:

"There was abundant testimony on both sides of the question, and neither was entitled to have the jury instructed that there was a presumption favorable to it (citing cases). The doctrine of those cases is that a disputable presumption should not be mentioned in instructions to the jury when there is evidence tending to disprove it, and the rule is equally appropriate in controversies like this. The jury may be misled by such references."

In the instant case it cannot be doubted, we think, that there was evidence adduced by defendant tending to support the defense of duress or illegal consideration. [See Lacks v. Butler County Bank, 204 Mo. 455, l. c. 478; Hensinger v. Dyer, 147 Mo. 219, l. c. 226, 48 S. W. 912.] In the case last cited, it is said:

"Duress may be said to exist when one person is, by threats of a criminal prosecution of such a character as to deprive him of his own free will and agency, induced to make a contract or perform some act that he would not otherwise make or perform."

It is argued for respondent, in substance, that duress could not have been present at the time of the execution of these notes before a notary in the city of Washington on the afternoon of the day following the meeting at the home of plaintiff's parents, since no threats were made at the notary's office and if threats or prosecution were made on the prior evening defendants had ample opportunity to seek advice touching the matter. But if threats of this character are made they may well constitute duress, not only when made, but so long as they may continue to operate upon the mind of the party threatened, affecting his free will and agency.

It is true that if threats of prosecution were made they were threats to prosecute the minor defendant, Louis Nowak alone; but it has been frequently held that threats to criminally prosecute an infant may constitute duress as to his father or other near relative. [See 9 R. C. L., 726.]

It is contended by respondent, however, that appellant is in no position to complain of the giving of plaintiff's instruction No. 4 for the reason that appellants requested and obtained an instruction, defendants' instruction F, as follows:

"You are instructed that while the court has instructed you that the law presumes that the note sued on was given for a lawful purpose, it is not meant that the defense of threats and duress is withdrawn from your consideration, and notwithstanding such presumption, if you believe that defendants were caused to execute said note by threats and duress, as submitted in these instructions, you will find the issues for defendants."

It is said that a party cannot complain of an instruction in harmony with one requested by him, citing: Thorpe v. Railway Co., 89 Mo. 650; Farrell v. Fire Ins. Co., 66 Mo. App. 153, l. c. 165, 166; Bauer Grocery Co. v. Smith, 74 Mo. App. 419, l. c. 424; Lange v. Railroad, 208 Mo. 458, l. c. 475, 106 S. W. 660. The general doctrine thus invoked is sound enough, but in the instant case it appears, we think, from the very wording of defendants' instruction F that it was requested by defendant only after defendant had been forced to do so by the giving of plaintiff's instruction No. 4; and that therefore it could not be held that defendant invited the error. In Griffith v. Continental Casualty Co., supra, touching a matter of this character, it is said:

"The record does not show in express terms the order in which the instructions were asked and ruled upon, but it does not stand to reason that appellant would have asked the court to give IX if it had first asked and the court had given VII, or that it would have asked for both at the same time. The only rational conclusion to be drawn from the premises is that appellant asked VII after I had been given and XI refused, as it says. Under such circumstances it did not invite the error, but, yielding under protest to the theory of the trial court, did the best it could to minimize the effect of the erroneous instruction already given. [Bailey v. Kansas City, 189 Mo. 503, 513, 87 S. W. 1182.]"

Furthermore as to the giving of plaintiff's instruction No. 4, it should be noted that while we have held above that the infant defendant may be held liable on his note given in settlement of a tort, the consideration thereof being as fully open to inquiry as though the suit were on the original cause of action, nevertheless we regard it as clear that the above-mentioned presumption was not available to plaintiff as against the infant defendant. The infancy of this defendant stood admitted by plaintiff's reply. And since, prima facie, an infant is not liable on a note given during infancy, no presumption could attend the note in favor of plaintiff as against the infant defendant.

We are consequently forced to the conclusion that it was not only error but prejudicial error to give plaintiff's instruction No. 4. The judgment must consequently be reversed and the cause remanded. It is so ordered.

*Becker* and *Daues, JJ.,* concur.