KANSAS CITY, Missouri, Appellant,

v.

Carl R. CONE et ux., Respondents.

No. 24734.

Kansas City Court of Appeals.
Missouri.

Oct. 7, 1968.

Herbert C. Hoffman, City Counselor, Ned B. Bahr, Associate City Counselor, Kansas City, for appellant.

Wm. Harrison Norton, Wilbur L. Pollard, Williams, Norton & Pollard, North Kansas City, for respondents.

CROSS, Judge.

This is a proceeding in condemnation instituted by appellant, Kansas City, Missouri, under authority of Article VI of its constitutional charter,[1] whereby it acquired permanent sewer rights-of-way and temporary construction easements in and upon lands belonging to various landowners, including respondent condemnees Carl R. Cone and Lucille G. Cone, his wife, to be used in connection with the location, construction and maintenance of a public sewer included in the city's pollution control project designated "Line Creek Interceptor Sewer."

In accordance with procedure prescribed by Section 131, Article VI, of the city's charter, the cause was initiated in the Circuit Court of Clay County by the filing of a certified copy of a city ordinance (Committee Substitute for Ordinance 32509) "condemning and taking" lands described therein belonging to the various condemnees, for the stated sewer purposes, and providing for "the payment of just compensation therefor." Thereupon, on application of the city and in conformity with charter provisions, the circuit court entered an order directed to all interested persons giving public notice of the pendency and nature of the proceeding, fixing a day and place for empaneling a jury to ascertain the compensation to be paid for the property taken, and apprising the landowners of the time within which claims for compensation must be filed. Legal publication of the order was duly effected at the court's direction.[2]

On the day fixed by the order aforesaid, and in accordance with charter provisions the court empaneled a jury of "six disinterested freeholders." Thereupon the hearing was commenced, evidence was heard, and the jury, as authorized by the charter and directed by the court, personally viewed the various tracts involved in the proceeding. At the conclusion of the hearing the court instructed the jury in conformity with specific rules for fixing compensation set out in the charter. The verdict of the jury included an award of damages in favor of respondents in the amount of $16,980.00. The city directed an appeal to the Supreme Court, which determined it had no jurisdiction and transferred the cause to this court, on the ground that the amount in controversy was the difference between the amount claimed and the amount awarded by the jury, to-wit: the sum of $5,650.00.

An extended fact statement is not necessary for discussion of the appeal complaints presented. The following we deem sufficient. Respondents own approximately 12 acres of land in Clay County lying within the boundaries of Kansas City. This property is zoned for "industrial use" and was used at the time of the trial as an auto salvage yard, containing an inventory of between 900 and 1000 cars and an extensive inventory of salvaged automotive merchandise. The permanent sewer

1. Civil Rule 86.01, V.A.M.R. provides: "In all condemnation proceedings, *except those in instances where special provisions to the contrary are, or may hereafter be, provided for by charters or ordinances of those cities having constitutional charters*, the procedure to be followed shall be that provided for by these rules." (Italics supplied.)
   Committee Note following Rule 86.01 states: "Provisions of constitutional charters and ordinances based thereon are not superseded (by rule 86.01) because of the doubtful legality of action annulling constitutional charter provisions."

2. It is stated in City of Tarkio v. Clark, 186 Mo. 285, 85 S.W. 329, that by analogy the ordinance occupies the place of the petition in an ordinary suit and that the order of notice is the summons or due process of law.

right-of-way imposed thereon was specified at 15 feet in width traversing the premises in a north and south direction for a distance of 1500 feet. The temporary construction easement was to be situated on both sides of the permanent easement to a width of an additional 75 feet on the west side and 60 feet on the east side. The improvement to be constructed was a "public sewer" to be paid for out of the general fund of the city, not by the assessment of benefits upon the real estate, and no special benefit district was involved. Items of damages shown by the testimony of Mrs. Cone, additional to depreciation in market value of the land itself, include the cost of removing 320 automobiles to other premises at a cost of $7.00 per vehicle "towed" and $10.00 for each vehicle "dollied"; storage of those vehicles during the time of construction operation at a cost of 50 cents each per day; cost of removing the vehicles back to respondents' property at the unit price above stated; necessary demolition or removal of a 16' x 20' building used for dismantling tires, a separate lavatory, an 8' x 12' building for storing pipes, a permanently set house trailer used to store innertubes and a large bus used in cleaning copper; removal of various catalogued stocks of springs, bumpers, tires, wheels, front axle assemblies with wheels, grills, truck tires, tubes and wheels, and complete rear end assemblies. Mrs. Cone further testified that respondents would have to suspend business while the construction work was being done because the salvage yard would be inaccessible for customer parking. Business would also be disturbed for at least 30 days prior to the beginning of construction work because it would take that long to move the 320 cars "and all of the other things that we do have to move. And then, it will take us at least thirty days to get this all back after they have cleared out." Based on a "before and after" measure, Mrs. Cone testified that respondents were damaged to the extent of $22,630.00. As bearing on the issue of whether any special benefits to respond-

ents' property resulted from the construction of the sewer projects, Mrs. Cone testified: "I don't feel, sir, that this sewer will benefit our property—in view of the fact that it is not a piece of property for development. The value of this property is for a salvage yard; and we certainly don't need a sewer to operate a salvage yard. Our water we do not get from Kansas City. We have spent an awfully lot of money to purchase our water through Parkville. And in view of the fact that we are on the Platte County line, our water meters are setting in Kansas City, however, we've had to pay to run those lines down to our property. And we have no water whatsoever from Kansas City; and I can't see where that Kansas City feels they're doing us so much good by giving us a sewer line, when we have no Kansas City water to run through it."

█ No evidence on the issue of special benefits was adduced by appellant at the hearing in the circuit court. However, appellant was relieved of its burden of proof in that respect by the jury's personal view of the condemned property. In condemnation proceedings under the city charter, it is considered that the personal view of the property by the six member freeholders' jury provided for by Sec. 144, Art. VI of the charter constitutes a species of evidence sufficient to support their conclusions on all questions involved in the determination of "just compensation", without the aid of any evidence *aliunde*. It is intended that such a jury be composed of persons expert in the appraisal of property values by reason of their knowledge and experience in that field. In a sense, the freeholders' jury possesses and exercises the functions of "commissioners" as well as those of a common law jury. Thomson v. Kansas City, Mo.App., 379 S.W.2d 194. In Kansas City v. Jones Store Co., 325 Mo. 226, 28 S.W.2d 1008, the court said: "A jury of freeholders is not limited to the evidence produced, as is a common-law jury. Such a jury, under section 144, Art. VI of the Charter of

Kansas City, may examine personally each piece of property described in the map or plat filed in the case, all property claimed to be damaged, and the city engineer, the director of public works, or the superintendent of parks, or any assistant of any of them, may accompany such jury for the purpose of pointing out the property condemned. Thus the jury can reach a conclusion with or without the assistance of any evidence produced before them, having the benefit of expert assistance in the examination of the property. The result reached is conclusive unless the court is satisfied that they have erred in the principle upon which they have made their appraisal."

The case was submitted under a verdict directing instruction (No. 1) drafted by appellant in accordance with "Rules for fixing compensation" specified in Sec. 149, Article VI of the charter and given by the court at appellant's request. In the language of those rules the instruction delineated the nature and scope of the appropriation, told the jury that it was their duty to determine and award respondents as their compensation the actual amount of damages to their property, and further informed the jury that before rendering their verdict they could examine the property personally and that in assessing just compensation they might use their own knowledge and judgment in connection with all the evidence. Neither the instruction nor Section 149 makes any reference to special benefits.[3]

The first of two points urged by appellant is a charge that the trial court erred in refusing to admit respondents' Exhibit A "because objection thereto was made by another party condemnee and not by appellant." The trial incident occurred during the examination of Donald R. Boyd, an employee of the city in the capacity of Assistant Director of the Pollution Control Department. At the request of respondents' counsel, Mr. Boyd produced a document in his possession and identified it as "Specifications for the Construction of Sewage Improvements" pertaining to the contract for the construction involved. Respondents' counsel offered the document in evidence, with particular reference to provisions defining the city's duty to return the surface of condemnees' lands to the same topography that existed prior to construction. Objection to the offer was made by counsel for other condemnees whose lands were not at that time the subject of testimony. After counsel for respondents had argued to the court in favor of admitting the exhibit and objecting counsel had argued thereagainst, the court specifically inquired of appellants' counsel, "What do you have to say about that?". Appellants' counsel committed himself as favoring rejection of the offer by this statement: "(T)his exhibit, here, shouldn't be considered in these proceedings, because all we're talking about is the difference, before and after, or the actual damage which may arise because of the location of the sewer in this particular place." Thereupon the

3. Sec. 149, Article VI, Charter, entitled "Rules for fixing compensation" recites, in pertinent part, the following:

"The jury of freeholders shall ascertain the just compensation to be paid, as follows:

"First. For each piece of property taken when the public use thereof shall be such that the city must have exclusive possession and control thereof, the actual value of the property taken.

"Second. For each piece of private property taken, when the public use thereof must be such that the city need only have such possession and control

as shall not wholly exclude the beneficial use thereof by the owner or owners, the actual damage from the public use specified in the ordinance.

"Third. For all damages to each piece of private property not actually taken so as to give the city the possession or control of same, the actual amount of damages such private property may sustain from the use of the private property taken for the public use for which it may be taken, including all that the city may from time to time do or cause to be done in, with or upon the property so taken."

court sustained the objection and excluded the exhibit. Appellant claims it was prejudiced by the ruling because the exhibit contained evidence favorable to its interest.

Notwithstanding the position taken by the city's counsel during the trial, appellant now urges this court to convict the trial court of error in excluding Exhibit A, on the sole ground that the objecting parties were strangers to the immediate inquiry with no right to be heard and that appellant itself had made no objection to the offer. Aside from the fact that appellant has reversed its posture in this court from that assumed in the trial court—a practice to which courts extend no favor —controlling rules of appellate procedure compel us to hold that appellant has no ground of complaint.

■ It is elementary that questions not raised and properly presented to the trial court in the first instance will not be noticed on appeal. As provided by Civil Rule 83.13, "no allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court." Specifically, a proper and timely objection to the trial court is necessary to preserve for appellate review an order of the court admitting or excluding evidence. 2A Mo. Digest, Appeal and Error, ☞203, 205. Therefore, in order to complain now to this court that Exhibit A should not have been excluded, it was necessary for appellant to have apprised the trial court at the time the question arose that it opposed and objected to exclusion of the exhibit. Having failed to do so, appellant brings nothing to this court for decision. One further observation: Exhibit A was a public document relating to a contract to which appellant was a party. The paper was in appellant's possession and was produced in court by appellant's employee. If appellant had believed the document contained evidence favorable to its own interest, there is no

reason why appellant could not have offered it in evidence.

■ Appellant's second point charges the trial court with error in refusing to give Instruction A offered by appellant, which reads as follows:

### "INSTRUCTION NO. A

The court instructs the jury that there is a presumption in law that the fair market value of the remaining lands of the respective condemnees is increased because of the availability of the sewer right of way condemned in these proceedings for the location, construction, reconstruction, maintenance, operation and repair of the sewerage improvement described in evidence, to serve said remaining lands, but whether such remaining lands are increased in value and by how much is for you to determine."

In developing the point, appellant preliminarily asserts the premise that when a sewer is located through private lands a presumption arises that such facility confers a special benefit upon the property, which should be taken into account by the jury in determining the amount of net damages sustained.[4] On that basis appellant argues that the jury "erred in the principle upon which they made their appraisal of just compensation", because the court had not instructed them, by the giving of Instruction A, that they "should consider the presumption of special benefits which would accrue by reason of the availability of the sewer easement." Whether or not a presumption arose, *in this particular case*, that the sewer projects conferred special benefits upon defendants' property, is a matter we need not decide and is immaterial to the question whether the court erred in giving Instruction A. Even under an assumption that such presumption existed, it would have been prejudicial error for the trial court to have referred to it

4. Citing State ex rel. State Highway Commission v. Vorhof-Duenke Company, Mo.Sup., 366 S.W.2d 329; Thomson v. Kansas City, Mo.App., 379 S.W.2d 194.

in the instruction. Our courts have uniformly condemned and proscribed the use of instructions which inform the jury as to the existence of a presumption.

■ In Neve v. Reliance Insurance Company of Philadelphia, Mo.App., 357 S.W. 2d 247, this court said: "Numerous Missouri cases have held that the giving of a rebuttable presumption instruction in a civil case is prejudicial error. See, Bailey v. Bailey, Mo.Sup., 11 S.W.2d 1026; Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S.W.2d 710, 107 A.L.R. 465; Dove v. Atchison, T. & S. F. Ry. Co., 349 Mo. 798, 163 S.W.2d 548; McCune v. Daniels, Mo.App., 251 S.W. 458; Swoboda v. Nowak, 213 Mo.App. 452, 255 S.W. 1079; Gibson v. Metropolitan Life Ins. Co., Mo. App., 147 S.W.2d 193; State ex rel. Nelson v. Hammett, 240 Mo.App. 307, 203 S.W.2d 115; Detrich v. Mercantile Trust Co., Mo.Sup., 292 S.W.2d 300."

In Wilson v. Murch, Mo.App., 354 S.W. 2d 332, the court commented: "Furthermore, it is well settled law in this State that it is reversible error to instruct the jury as to the existence of a presumption when there is evidence to rebut it. Haycraft v. Grigsby, 88 Mo.App. 354; McCune v. Daniels, Mo.App., 251 S.W. 458; Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S.W.2d 710, 107 A.L.R. 465; Morton v. Heidorn, 135 Mo. 608, 37 S.W. 504; Bailey v. Bailey, Mo., 11 S.W. 2d 1026; Detrich v. Mercantile Trust Co., Mo., 292 S.W.2d 300. There was evidence in the case which justified submission of the issue of fraud. Such being the case, defendants were not entitled to have the jury instructed that there was a presumption favorable to them."

In Gibson v. Metropolitan Life Ins. Co., Mo.App., 147 S.W.2d 193, where a challenged instruction told the jury that the law presumed the insured plaintiff had complied with all policy provisions after having paid the first premium, the court held: "Even if this were a case for the application of the presumption mentioned, it would be erroneous to instruct the jury with reference to it. At most it is merely a procedural presumption, and when evidence is introduced pro and con upon the issue, the case should go to the jury upon the evidence unaided by any reference to the presumption."

In Swoboda v. Nowak, 213 Mo.App. 452, 255 S.W. 1079, the court gave an instruction telling the jury there was a presumption that a certain note in suit was given for lawful purposes, and that defendants had the burden to show by the preponderance of the evidence that the note was given for an unlawful purpose before they were entitled to a verdict. Defendants contended the instruction was erroneous. The court ruled as follows: "The attack upon this instruction is that when evidence had been adduced, pro and con, as to the character of the consideration for the note as shown above, then any presumption of a valid and lawful consideration disappeared from the case; and that it was error to refer to such presumption in submitting the case to the jury. This argument is indeed sound. In so far as any presumption of this character existed in favor of this note, it could operate merely by way of coming to plaintiff's aid to make a prima facie case. When the facts all came in before the jury, such presumption had no further procedural purpose to serve, and it was error to throw the same into the scales in favor of plaintiff in submitting the case to the jury."

In State v. Martin, 364 Mo. 258, 260 S.W.2d 536, the Supreme Court said: "In civil cases we hold that a presumption is a rule of law (unless it is a conclusive presumption, i. e., a rule of substantive law) which puts the burden of producing some substantial evidence on the party presumed against; that when substantial evidence, however slight, is adduced by the opponent, the presumption disappears and the triers of fact receive the issue free of any presumption; that while the facts giving rise to the presumption in the first place remain in the case, those facts and those to the

contrary are for the jury. Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, 139(1–4). And in civil cases, we condemn instructions as confusing and misleading which tell the jury what is 'presumed'. And hold that presumptions are for the court, not the jury."

In Dove v. Atchison T. & S. F. Ry. Co., 349 Mo. 798, 163 S.W.2d 548, the Supreme Court held the following: " 'Presumptions usually concern the shifting of the burden of evidence and are for the court rather than the jury'; and they should not be stated in instructions. Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S.W.2d 710, 107 A.L.R. 465, and cases cited; Weaver v. Allison, 340 Mo. 815, 102 S.W.2d 884, 110 A.L.R. 672; for effect of presumptions, see State ex rel. Steinbruegge v. Hostetter, 342 Mo. 341, 115 S.W.2d 802; State ex rel. Waters v. Hostetter, 344 Mo. 443, 126 S.W.2d 1164. In other words, presumptions are procedural and are not for consideration of the jury, which has the function of considering and determining what facts are shown by the evidence."

In accordance with the massive weight of authority to support our decision, we rule that the trial court did not err in refusing Instruction A.

■ Appellant's position here is inconsistent. On the one hand it says the jury was not properly instructed in that they were not told they were to consider special benefits in determining the amount of damages sustained. This amounts to an indirect attack on the sufficiency of the verdict directing instruction (No. 1), which appellant itself had prepared and the court gave at appellant's specific request. On the other hand, appellant stoutly defends the instruction's propriety. In its original brief appellant informs us that

"Appellant's Instruction No. 1 follows the rules for fixing compensation as prescribed by Appellant's Charter (Section 149, Article VI, Charter)." and that "the validity of the rules for fixing compensation under Appellant's Charter has been approved." Apparently in reply to argument by respondents in their brief that the giving of Instruction A would run counter to the MAI Committee's mandate that no instructions would be given to the jury on special benefits,[5] appellant countered by arguing in its reply brief that the use of MAI was not appropriate in charter condemnations, and renewed its defense of Instruction No. 1 in these words: "Appellant's Charter provides the method for fixing the just compensation (Section 149, Article VI of Appellant's Charter), and this method is exclusive where the condemnation proceedings are brought under the Charter, and was reflected by Instruction No. 1, * * * MAI 9.02 is not applicable because this was a Charter condemnation and was governed by Section 149, Article VI, providing the rules for fixing compensation. * * * No instruction in the form of MAI 9.02 was offered by Appellate or Respondents, and properly so, because this was a Charter condemnation, with the rules for fixing compensation therein provided." Appellant will not now be heard to impugn its own handiwork (Instruction No. 1), particularly since no complaint of its propriety or sufficiency has been preserved for review. Civil Rule 79.03. As to whether MAI should have been followed we express no opinion. That question is not before us for decision.

■ We accept the result reached by the jury as conclusive. We are satisfied that they arrived at their verdict in accordance with appropriate standards, and that "they have (not) erred in the principle upon

5. Following MAI 9.02, the Committee comments: "The Committee considered preparing a separate special benefits instruction but rejected the idea because special benefits can be covered by argument within the framework of the above instruction."

which they have made their appraisal"; Kansas City v. Jones Store Co., 28 S.W. 2d 1008. The terms of the verdict itself attest the jury's cognizance of their duty to take into consideration the question of benefits. Their preamble reads in part as follows: "We, the undersigned disinterested resident freeholders of Kansas City, Clay County, Missouri, having been duly appointed, empaneled and sworn upon our oath by the within Court as the freeholder jury to determine fairly, justly and impartially the damages and benefits * * submit the following as our report: * * ". We are convinced that the city has suffered no injustice.

The judgment is affirmed.

HOWARD, J., concurs.

MORGAN, J., not participating.