ANDREW HOLLENBECK, Respondent, v. JAMES H. McCORD, Appellant.

Kansas City Court of Appeals, December 5, 1910.

1. **AUTOMOBILES: Frightening Horses.** Plaintiff was in his wagon driving his team of horses along a public road when he met an automobile which did not turn to the right and, which frightened his horses, causing them to run away, overturning the wagon and throwing plaintiff out and injurning him. The chauffeur and two occupants of the automobile testified that they did not meet plaintiff driving his team on the public road. *Held*, that as plaintiff's evidence, although uncorroborated, was supported by circumstances showing that he was injured by being thrown from his wagon when his horses ran away, that they were caused to run as they did by fright, and that defendant's automobile was the only one that passed on that road that day, the court did not err in refusing to direct a verdict for defendant.

2. **JURY: Reading Newspapers.** The publication in a newspaper, during the trial, that the court excused one of the panel because he was the agent of an insurance company which had insured defendant against accidents resulting from the use of his automobile, is not sufficient ground to set aside the hearing and call another jury, where there is no proof that the jury were unduly influenced by it.

Appeal from Buchanan Circuit Court.—*Hon. L. J. Eastin*, Judge.

AFFIRMED.

*R. L. Spencer, Vinton Pike* and *O. C. Mosman* for appellant.

(1) The jury should have been instructed to find for defendant. There was no evidence, that the automobile was making loud noises, or buzzing, rattling and making frightful and terrifying noises and emitting steam and gasoline odors. The incident could not have happened as plaintiff alleges and testifies. It

must have happened some other way; and the jury should not conjecture that it did in a way to involve negligence by defendant. Spiro v. St. Louis Transit Co., 102 Mo. App. 250; Hunter v. Railroad, 116 N. Y. 615; Gurley v. Railroad, 104 Mo. 211; Wright v. Crane, 106 N. W. 71; O'Donnell v. O'Neill, 130 Mo. App. 360. (2) It was error to instruct the jury that the auto driver was guilty of negligence if under the circumstances of this case he fail seasonably to turn to the right. But if it was a proper direction to give the jury, it should have been qualified by defendant's instruction "E," because it would not have been negligent not to turn to the right if plaintiff had taken that part of the road himself, and thereby put himself in the way the auto would have taken by turning to the right. Brooks v. Hart, 14 N. H. 307; Tyler v. Nelson, 109 Mich. 37; Becherle v. Weiman, 12 Mo. App. 354; 18 Am. and Eng. Ency. 580; Needy v. Littlejohn, 115 N. W. 483. (3) The jury should have been discharged. The article represented a transaction in court in this case, in which was developed a fact the court considered the jury should not know. The reporter who was permitted to overhear what transpired, and knew the court's view and order respecting it, went away and printed the fact in his paper and sent it to his subscribers who were members of the jury. The motion to discharge alleges and plaintiff in his objection admits the jurors read the article. It was as injurious to defendant as if introduced by plaintiff on the trial. It was communicated to the jury by one who was permitted by the courtesy of the court, to overhear what was quietly and secretly being done out of the hearing of the jury and in the same room with them. Trent v. Printing Co., 126 S. W. 238; Mann v. Phoenix B. & C. Co. (opinion by this court filed at October term, 1909, now on rehearing on other grounds); Sawyer v. Arnold, 38 Alt. 333; Anderson v. Duckworth, 162 Mass. 251; Cudahy Pack. Co. v. Skoumal, 125 Fed. 470. (4)

For the like reason the motion for a new trial should have been sustained. It was proved by the affidavit of the manager that four of the jurors were subscribers to the paper and that it was delivered to them. This affidavit was not denied, and while defendant could not file affidavits of jurors that they did read and were affected by the publication, plaintiff could that they did not read it and were not influenced by it. That plaintiff did not have the jurors support their verdict, when he easily could do so and by defendants proof was called upon to do so, raises the presumption that jurors could only have testified against their verdict. 1 Stark, Evid., 54; Blatch v. Archer, Cowper 63; Com. v. Webster, 5 Cush. 316; People v. McWharter, 4 Barb. 438; Kirby v. Tallmadge, 160 U. S. 383; Graves v. U. S., 150 U. S. 121 and cases cited. (5) The verdict is the result of rural prejudice against automobiles inflamed by poison administered by the newspaper article; against the overwhelming weight of the evidence and all reasonable probabilities and should not be allowed to stand.

*Charles S. Strop, James W. Boyd* and *J. A. Sander* for respondent.

(1) It was not error on the part of the court to refuse to instruct the jury to find for the defendant. There was ample evidence to support the verdict. The contention that upon plaintiff's testimony the jury were left to conjecture as to how the accident happened is wholly without merit, and is fully and completely answered in third point decided in the case of Setzler v. Met. St. Ry. Co., 127 S. W. 1. (2) The case was properly tried, and the instructions given on the part of the respondent are legal and proper. There were only four instructions given on his part; No. 2 defines the measure of damages; No. 3 tells the jury that nine or more may return a verdict; and No. 4 is simply the

form of verdict; so that the only instruction given on the part of respondent is instruction No. 1. It is absolutely in accordance with the law as defined by this court and the Supreme Court, and as contained in the Act of the General Assembly, approved March 19, 1907. (Acts 1907, p. 73.) McFern v. Gardner, 121 Mo. App. 1; Hall v. Compton, 130 Mo. App. 675; Ransom v. Union Depot Co., 126 S. W. 675; Sapp v. Hunter, 134 Mo. App. 685. (3) The complaint in reference to the newspaper article is without foundation. There is no evidence that the article was even seen, read or heard of by any one of the jurors. If the jurors had read it there is nothing in it material, or so material as to have a jury, in the middle of a trial properly conducted, discharged from a further consideration of the case. The appellant does not in his motion allege that any juror read the article, but he simply says that he believes that it was read by them, or a majority of them. There was no evidence before the court to show that any one of these jurors had read the article. The court was decidedly of the opinion that the said article had no influence, and could have no influence on the jury.

BROADDUS, P. J.—This is a suit for damages sustained by the plaintiff as the result of the alleged negligence of defendant's chauffeur in charge of and operating his automobile.

The injury was received on the 18th day of January, 1908. On that day plaintiff, according to his account of the occurrence, was in his wagon driving his team of horses along a public road in Buchanan county, known as the Amazonia road leading to St. Joseph. When near the residence of a Mr. Woods he met an automobile which alarmed his horses and caused them to run away with the wagon, which overturned, and threw plaintiff to the ground whereby he was severely injured.

There was no dispute but what plaintiff was found in the road near Mr. Woods' house partially unconscious with several broken bones and other injuries.

Defendant denied that it was his automobile that alarmed plaintiff's horses and caused them to run away. In the vehicle besides the chauffeur named McFall, were Mrs. McCord, defendant's wife, and Mrs. Garner and Miss Burke. They were all called, except Mrs. McCord, as witnesses at the trial. McFall testified that he did not meet plaintiff driving his team on the public road on the day in question and the testimony of Mrs. Garner and Miss Burke was to the same effect.

The plaintiff's testimony was to the effect that he saw the automobile approaching when it was from one hundred to one hundred and fifty yards away, at a speed of about thirty-five miles per hour; that his team showed some alarm; that he turned them as far as he could to the right side of the road; that the automobile came on without turning to the right and passed so close that he was not certain whether or not it struck his wagon; that when the automobile was within fifteen or twenty feet, the horses suddenly jumped to the left and got far enough over on that side of the road to escape being struck.

Plaintiff's evidence also tends to show that if he was struck as he claims he was, it was by defendant's automobile, as it was the only one that passed over the road on that day.

There had been a previous trial of the case in which the verdict was for the plaintiff, but it was set aside and a new trial granted because the court was of the opinion that it was not supported by the evidence. At another time after trial had begun the order for hearing was set aside on account of the sickness of a juror.

The trial lasted more than one day and during the time the court adjourned the proceedings from on Sat-

urday until the following Monday. On which day the
defendant filed a motion to discharge the jury because
of a certain publication in a newspaper printed in St.
Joseph since the court had adjourned. The article
gave a history of the case including the former trial
and the reason the verdict was set aside, and it also
contained the following statement. "Yesterday a ques-
tion arose as to whether Colonel McCord himself is de-
fending the case, or the accident insurance company in
which he carried a policy. The challenging of the jury
was in progress. One venireman—Roy Brill—when
asked as to his occupation said he was an agent of the
Travelers Insurance Company. C. F. Strop, represent-
ing Hollenbach, asked that Brill be excused from the
panel as the Travelers Insurance Company, and not
McCord, he said, was defending the case. Attorneys
for defense objected. The court then ordered that evi-
dence be heard as to whether McCord is insured
against accidents resulting from the use of his automo-
bile. In answer to a question by Strop, McCord, said
he has a five thousand dollar indemnity in the Trav-
elers Insurance Company. The juror was excused."

The inquiry as to the competency of the said ve-
nireman was not in the presence and hearing of the
jurors who tried the case. It was shown that some of
the jurors were regular subscribers to the paper in
question, but there was no positive evidence that they
read the publication.

The court overruled the motion on the ground that
the judge did not believe that the publication would af-
fect the opinion of any juror, admitting that he had
read it.

Defendant contends that plaintiff's version of the
occurrence cannot be true, because it was a physical
impossibility that it could have so happened. For in-
stance if the machine was moving at the rate of thirty-
five miles an hour when fifteen or twenty feet away, the
team of horses did not have time to jump to the left

and escape being hit. If the speed of the machine and the distance given by plaintiff are correct the feat appears somewhat extraordinary, but not altogether impossible. A horse under the impulse of terror acts with almost lightning-like rapidity. And one unused to an automobile, meeting one on a public highway traveling with the speed of a bird, would as a rule be maddened with terror and it would be possible for it in a moment of time to accomplish that which to defendant seems impossible. Besides the distance between the horses and the machine might have been greater than plaintiff supposed, as it was largely guesswork. An allowance in such instances must be made for variations from the exact standard.

As to the occurrence, the plaintiff was the only witness, while he was confronted with the three who were in the automobile with Mrs. McCord. The weight of the evidence was in favor of the defendant and if his witnesses are to be believed plaintiff was not injured as he claims to have been. But he had circumstances in his favor. He was certainly injured by being thrown from an overturned wagon while his horses were running away with it. And we may assume that fright caused the horses to run as they did. Coupled with these circumstances, the fact that defendant's automobile was the only one that passed the road that day we do not think the trial court would have been justified in directing the jury to return a verdict for the defendant. The question was one of credulity of which the jury was the sole judge.

We are of the opinion that the court was right in refusing to discharge the jury and order a new trial for the reasons stated in the motion. This case is distinguishable in principle from that in Gore v. Brockman, 138 Mo. App. 231, and Trent v. Printing Co., 141 Mo. App. 437. In each one of these cases the plaintiff was attempting to prejudice the jury against the defendant by conveying to them the information that de-

fendant was protected from loss by an indemnity corporation, the effect of which was said in the Gore case, "to withdraw the real defendant from the consideration of the jury and to substitute an insurance company." In the latter case the court said: "We take cognizance of the universal belief among lawyers of the highly injurious effect on the defense in a personal injury suit of the intimation that the defendant is protected by insurance."

There is some difference in telling a jury engaged in the trial of a case that the defendant is protected from loss by an insurance company, and the mere fact that the jury may have read in a newspaper that the court excused one of the panel summoned to try the case because he was agent of an insurance company which had insured defendant against accidents resulting from the use of his automobile, for a juror would in all probability attach more importance to what was said and done in open court, than what he saw in a newspaper, which to him would be mere hearsay, as no such thing happened in his presence. There was a greater reason for the holding in the cases mentioned than the objectionable statements were improper and misleading, viz.: that the motive inspiring them was for a wrong purpose. But however that may be, it is not in the power of a court to prevent the publication of its proceedings. It is true the court in civil cases might if lawful put a guard over a jury and lock them up during its recesses, like it is done in criminal cases of the gravest character, such as murder and the like, but there is no law for such a procedure.

To hold that under the circumstances that the court should set aside the hearing and call another jury would be setting a precedent that might lead to unfortunate results. It would produce an element of uncertainty in many cases, because it could not be known at what time a party litigant might conceive it to be to his advantage, for some cause or another, to take ad-

vantage of the fact that some newspaper had published and the jurors read an article in reference to the case that would tend to his prejudice, and ask that the jury be discharged and another summoned in its stead. At the same time it would produce confusion and delay as well as to increase cost.

And besides a juror should not be considered a proper subject for wrongdoing and weakness. If he is to be entrusted with the responsibility of determining the right and the wrong between litigants and administering justice, he should be credited with that degree of honesty and intelligence necessary for his position. In the absence of proof that the jury were unduly influenced by the publication to the prejudice of defendant we hold that there was no error in overruling defendant's motion to discharge it.

The court gave at plaintiff's request instruction numbered one, which is of great length, but we believe notwithstanding that fact and defendant's criticism it contained proper declarations of the law. The instruction followed closely the statute governing "Motor Vehicles" as to the duty of persons operating such vehicles on public roads to persons traveling in vehicles drawn by horses whom they pass or overtake.

Finding no error in the trial the cause is affirmed. All concur.