MAYOR, COUNCILMEN, AND CITIZENS
of the CITY OF LIBERTY, Missouri,
Respondent,

v.

James Collier BOGGESS, Appellant.

No. 46882.

Supreme Court of Missouri,

Division No. 1.

March 9, 1959.

Harvey Burrus and Rufus Burrus, Independence, for appellant.

Robert F. Sevier, William E. Turange, Liberty, for respondent.

HOLMAN, Commissioner.

In this action plaintiff, a special charter city, condemned Lots 163 and 164 in the "Original Town of Liberty" for "off-street parking of motor vehicles." The commissioners awarded defendant damages in the sum of $48,720 for the appropriation of said property and he filed exceptions to that award. The subsequent trial in the circuit court resulted in a verdict and judgment for defendant in the amount of $52,-000 and he has duly appealed therefrom. Since defendant claimed damages in an amount exceeding $85,000, and offered evidence in support thereof, we have appellate jurisdiction, as the amount in dispute exceeds $7,500. Article V, Section 3, Constitution of Missouri 1945, V.A.M.S.

Plaintiff city was created and granted a special charter by an Act of the Legislature adopted in 1861. Laws of Missouri 1860-1, p. 209 et seq. At the outset herein we are met with the contention that any effort by plaintiff to condemn the instant property should have followed the provisions of the charter and hence the circuit court did not have original jurisdiction of this cause. Defendant filed no answer but filed a motion to dismiss, assigning as grounds therefor, "1. That the plaintiff herein named has no legal capacity to sue; 2. The petition fails to state a claim upon which relief can be granted." The motion was overruled. Also defendant orally objected to the appointment of commissioners because plaintiff had failed to allege or offer proof that it had attempted to agree with defendant upon the amount of compensation before the filing of the petition.

It seems clear that under the provisions of Section 71.350 (all statutory references are to RSMo 1949, V.A.M.S. unless otherwise indicated), "Any incorporated city" with a population of not less than 1,000 nor more than 700,000, may exercise "the power of eminent domain * * * in the manner provided by law for the condemnation of land for street purposes in such municipality" in order to acquire unimproved property, or improved property devoted to commercial purposes, for use in operating thereon facilities for parking motor vehicles.

Defendant says that in condemning land for the purpose indicated plaintiff was bound to follow the procedure specified in Art. VI, Section 2 of the Charter which reads as follows: "When it is necessary to take private property for opening, widening, altering or extending any public street, lane or avenue, the corporation shall make a just compensation therefor to the person whose property is so taken; and if the amount of such compensation cannot be

agreed upon, the Recorder shall cause the same to be ascertained by twelve disinterested freeholders of the city."

We find it unnecessary to consider the question presented by the fact that, by virtue of subsequent laws, it appears that plaintiff no longer has an official designated as "Recorder." See Section 81.070 (as amended, Laws 1953, p. 297, Section 1) and Section 98.030. We have concluded that in any event the foregoing charter provision is not the exclusive method by which plaintiff may condemn the property involved herein. We base that conclusion upon the provisions of Section 1, Art. III of the Charter which provides that the city council shall have power, by ordinance, to open and establish streets, and that "no such street, lane, avenue, or alley shall be opened, located, or altered, unless such city council shall pay the owner of such real estate such damages as may be found due such proprietor, to be ascertained by a jury of twelve men, or by any other provisions, as the council may by ordinance prescribe, or by other legal proceedings." While the word "condemn" does not appear in the quoted provision, we think it obviously refers to the exercise of the right of eminent domain. We think that section authorized the assessment of damages by a jury of twelve men (as provided in Art. VI, Section 2), or in any other manner the council may, by ordinance, provide, or "by other legal proceedings." In the instant case the council, by ordinance, provided that "the city attorney is instructed to institute condemnation proceedings in the Circuit Court of Clay County, Missouri, to acquire Lots 163 and 164" etc. We rule that under the provisions of Art. III, Section 1, supra, the council had authority to so provide and hence the circuit court had jurisdiction of this cause.

◼ It is also our view that plaintiff was not required to allege and prove that it attempted to agree with defendant on the amount of compensation. Such a showing is not required unless it is specified in the statutory or charter provisions upon which the proceedings are based. City of Kirkwood v. Venable, 351 Mo. 460, 173 S.W.2d 8. Defendant bases his contention upon Charter Art. VI, Section 2, supra, which states that "if the amount of such compensation cannot be agreed upon, the Recorder * * *." However, as we have heretofore indicated, this proceeding is not based on that section of the charter. Plaintiff says this action was brought under the provisions of Sections 88.010 to 88.073, inclusive, and we can see no reason why those sections would not govern this proceeding. The sections indicated do not contain any requirement that the plaintiff attempt to agree with the owner of the property upon the amount of compensation before filing suit. We accordingly hold that plaintiff was not required to allege or prove such an attempt as a prerequisite to the appointment of commissioners.

◼ The next point briefed by defendant is that the trial court erred in overruling his challenge for cause which was directed to seven members of the jury panel on the ground that they were residents and citizens of Liberty. More specifically, the objection seemed to be based on the alleged fact that said jurors were plaintiffs in the action and, in any event, had a personal interest in the outcome of the case. This objection arose, in part, from the unusual wording of the charter in regard to the name of the city, which is ordinarily known as the "City of Liberty." Art. I, Section 1 of the charter, supra, provides that the inhabitants of the designated area are "hereby constituted a body corporate and politic, by the name and style of 'The Mayor, Councilmen and citizens of the city of Liberty;' and by that name they and their successors forever, shall have perpetual succession; shall sue and be sued * * * in all courts of law and equity, and in all actions whatever; * * *." It therefore is clear that the designation of plaintiff herein as "Mayor, Councilmen and citizens of the city of Liberty" is the use of the lawful name of the instant municipal

corporation and such conforms with the mandate of the charter in respect to the name by which plaintiff must sue. It is accordingly apparent that the citizens of Liberty are not parties plaintiff in this action.

Moreover, the fact that some members of the panel were residents and citizens of the plaintiff city would not disqualify them from serving as jurors in this case if they were otherwise competent. This, by reason of Section 494.040, which reads as follows: "In all actions brought by or against any county or city, the inhabitants of the county or city so suing or being sued may be jurors, if otherwise competent and qualified." We accordingly rule this assignment against defendant.

The lots herein condemned are located a half block from the south side of the courthouse square. Lot 163 fronts 70' on Main Street and Lot 164 has a 70' frontage on Water Street. Both lots are 105' deep. Since they are abutting lots the entire tract taken is 70' x 210'. An alley runs along the entire 210 feet constituting the north boundary thereof. On the west end of the tract is a brick building 70' x 120' which was constructed in 1905 or before. It has recently been used for storage in connection with the operation of defendant's nearby hardware store. It was originally constructed as a livery stable and was later used as a garage. A part of the remainder of the tract is vacant land, although there are two small buildings facing Water Street which are used as a cafe and taxi office and rent for a total of $70 per month.

Defendant presented four expert real estate appraisers who testified as to the value of the property. Cecil F. Shopen fixed the reasonable market value at $82,700. The value placed on the property by the other witnesses for defendant was as follows: D. R. Carmichael, $76,400; Howard Chrisman, $80,740; and Luke Choplin, $85,800. Plaintiff produced two expert witnesses, one of whom valued the property at $35,000 and the other at $37,500. There was evidence to the effect that the Lowman garage

building, 70' x 94', which faces Main Street and is located just south of the instant property, was purchased in 1954 for $17,-500. Evidence was also presented as to the sale price of several other nearby properties that had sold in recent years.

■ The next contention of defendant relates to the alleged error of the trial court in striking the testimony of defendant as to the value he placed on the property. On direct examination defendant testified that the reasonable market value was $100,000. On cross-examination by plaintiff's counsel, the following occurred:

"Q. All right, sir. Mr. Boggess, you say that the value that you attach to this property being taken by the city is one hundred thousand dollars? A. Under the circumstances which it's being taken, yes.

"Q. What do you mean by 'under the circumstances'? A. I don't care, I don't care to sell the property at all. It's never been offered for sale.

"Q. Is that the method by which you arrived at, the means you used in determining the value of it you testified to today? A. Yes. Mr. Sevier: Move the testimony be stricken as not a fair method of arriving at fair market value.

"The Court: The testimony as to value is stricken from the record."

Shortly thereafter, defendant's counsel sought to re-establish the testimony by the following question and answer:

"Q. (By Mr. Burrus) Well, I'll ask you if the value that you attributed to the property awhile ago is the fair market value that you think the property would bring on the market? A. Yes, sir."

Thereafter, on recross examination, the following occurred:

"Q. Mr. Boggess, you testified on June the 21st, didn't you? A. I don't know the date, I don't remember the date.

"Q. Well, you remember that there was a hearing here? A. Yeah, that's right. I don't remember the date of it.

"Q. And you recall what the value you said that day? A. I think it was $184,000.

"Q. And you have any reason why you dropped eighty-four thousand since June of '57? A. Because the question was asked what I valued it at.

"Q. Well, the question was asked here what you valued it at, and at that time you said a hundred and eighty-four thousand. A. That's right. I still, if I wanted—if I had it open where I could sell it, that was what, that is what the price would be.

"Q. Well—A. I'm not being— I—it's not being sold, it's being taken.

"Q. Oh, so that's the basis of your hundred thousand dollars appraisal? A. That's right.

"Mr. Sevier: Well, I move the testimony be stricken as being clearly inadmissible.

"The Court: The testimony stricken, the testimony stricken from the record. That's not the question at all in this case. * * *

"The Court: Q. Are you considering, Mr. Boggess, the fact that it's being taken from you and against your will and without your consent, is that— are you considering that when you say it's worth a hundred thousand dollars?

"The witness: No, sir. I've considered it by tentative offers that I've had for it as of today if it was on the present market.

"Mr. Sevier: I object to that, if the Court please, move it be stricken.

"The Court: Well, objection sustained. Stricken out.

"Mr. Sevier: And the jury instructed to disregard it.

"The Court: The jury will disregard it."

The sole issue in this case was the reasonable market value of the property taken. No question was raised as to the qualifications of defendant to express an opinion as to its value. However, when giving an opinion as to value, defendant was required to base that opinion upon elements that may properly be considered. State ex rel. State Highway Commission v. Pope, 228 Mo.App. 888, 74 S.W.2d 265. It would appear that the fact that defendant "didn't care to sell the property at all * * * it's not being sold, it's being taken" entered into the formation of his opinion as to the value he placed on the property. That fact was not a proper element to be considered in arriving at the value of the property. State ex rel. State Highway Commission v. Huddleston, Mo.App., 52 S.W.2d 33. When questioned by the court defendant also indicated that, in arriving at his opinion, he considered "tentative offers that I've had for it." Such could not properly be considered. Offers made by prospective purchasers are inadmissible as evidence of value. State ex rel. State Highway Commission v. Clevenger, 365 Mo. 970, 291 S.W.2d 57. Certainly, the court should not permit the jury to consider an opinion which appeared to be based upon "tentative offers" the witness has had for the property. For the reasons indicated, we rule that the court did not err in striking out defendant's testimony as to value.

 Defendant also complains of the refusal of the court to give Instruction A offered by him. That instruction reads as follows: "You are instructed that in determining the value of the land in controversy, taken by plaintiff, the jury may take into consideration its location, the uses and purposes for which the property is suitable

or adaptable considering such location, and having regard, not alone to the existing business wants of the community in which the same is located, but also to such uses as may be reasonably expected in the near future, together with all the surroundings and conditions as shown in evidence in this case; *and you may also take into consideration other bona fide sales of property in the immediate vicinity and similarly located, made at or about the time the commissioners made their report in this case, to-wit: July 10, 1957."* We note that the court gave Instruction No. 2 which is exactly the same as Instruction A except that it did not include the portion we have italicized. Therefore, we need consider only that portion of the instruction in determining whether the court erred in refusing it.

Defendant correctly asserts that a very similar instruction was given in Metropolitan St. Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860, and such was held not to be error. However, that opinion does not contain a discussion of the portion of that instruction similar to the provision in Instruction A which we are here considering. In considering the question presented, we think it advisable to suggest that caution should be used in giving instructions which tell the jury that it may consider certain evidence. A jury should always understand that it should consider all of the evidence, and when an instruction specifies a fact or facts which the jury is told it may consider there is danger of giving undue prominence to such fact or facts with the result that prejudicial error may result. Spalding v. Robertson, 357 Mo. 37, 206 S. W.2d 517. While we recognize that it is proper for an instruction to tell the jury what elements it may consider in fixing the damages (as was done in the first part of Instruction A), we think the portion of the instruction under consideration does not refer to an element of damages but calls attention to specific evidence which tends to prove damages. However, we need not determine whether the portion of the instruction under review was or was not proper because, even if we assume, for the purposes of this opinion, that it was proper, we rule that the court did not commit prejudicial error in refusing it because such was merely supplemental to the other damage instructions and, in a sense, was cautionary in nature, and the giving or refusal of same was a matter resting largely within the discretion of the trial court. Hogan v. American Transport, Mo.Sup., 277 S.W.2d 495.

The next contention of defendant is that the court erred in making prejudicial remarks in connection with its rulings during the argument of defendant's counsel and in refusing to discharge the jury after the remarks had been made. A portion of the argument of Mr. Rufus Burrus, and the rulings and remarks complained of, appear in the following:

"And they finally brought Mr. Lowman, I think his name is, that owns the building, the gentleman that runs the garage, because they want to prove by him that he bought the building for seventeen thousand five hundred. Did they ask him what the building was reasonably worth, of Mr. Boggess', next door? No, he didn't. Did he ask him what was the reasonable value of his lot, next door? No, he didn't. Here was a chance for him, if they were able to sustain this thirty-five thousand dollars or thirty-seven thousand, was to ask the gentleman next door what it was, but they were just going to stop and say because he got his bargain—which it must have been a bargain, nobody going to deny that, for seventeen thousand five hundred dollars—that that's the kind of a way that the jury is going to tell Mr. Boggess he's got to sell his property for.

"Mr. Sevier: Well, I object to that, now, as insinuating somebody—I mean as trying to instill in the argument some inflammatory reason that he is having to sell it.

"Mr. Burrus: He is having to sell it.

"Mr. Sevier: Well, it's not an element of value, the fact he's having to.

"Mr. Burrus: I don't say it's an element of value he is having to sell it.

"The Court: You don't contend the jury should consider that?

"Mr. Burrus: No, I don't, sir.

"The Court: Well, then don't argue it, please, don't argue something you know is wrong.

"Mr. Burrus: Just a second."

Thereupon, the following proceedings were had outside the hearing of the jury:

"Mr. Burrus: I object to the Court's remark that was made from the Court's bench towards counsel, as being improper and was prejudicial and tends to prejudice the minds of the jury to the remarks of counsel; it was uncalled for, and I ask the Court to discharge the jury for the reason of having done so. Thereupon, the following proceedings were had in hearing of the jury:

"The Court: The objection to the Court's remark is overruled. The motion to discharge the jury is overruled. And stay within the evidence, Mr.—"

Thereupon, the following proceedings were had out of hearing of the jury:

"Mr. Burrus: I again except to the Court's remarks from having made the remark as not called for and unnecessary and ask the Court again to discharge the jury."

Thereupon, the following proceedings were had in hearing of the jury:

"The Court: Your second objection is overruled, and that your, the motion to discharge the jury, is overruled."

It was proper for defendant's counsel to argue that the Lowman garage building was purchased at a bargain and that just because Mr. Lowman obtained a bargain the jury should not use bargain standards in fixing the value of defendant's property. However, at the time of the objection defendant's counsel seemed to be reminding the jury that defendant was being compelled to sell his property. After objection and during the colloquy that followed, defendant's counsel conceded that the jury should not consider that fact. Under those circumstances, the request of the court that counsel not argue something he knew was wrong was more or less invited, although we think it would have been desirable for the court's admonition to have been phrased in language less critical of defendant's counsel. At any rate, we have concluded that under the circumstances presented the instant remark did not constitute reversible error and hence the court properly refused to discharge the jury.

■ Defendant has called our attention to the fact that objections he made to the remarks of the court were made out of the hearing of the jury and that the rulings of the court thereon were within the hearing of the jury. It is said that it was prejudicial to defendant for the court to thus call the attention of the jury to the fact that the court was ruling adversely to defendant on a motion or objection which the jury had not heard. No case has been cited which involves that precise situation. We have the view that, as a usual rule, objections made out of the hearing of the jury should likewise be ruled upon outside of the hearing of the jury. However, in a sharply contested trial (as was the instant one), many rulings are ordinarily made which are adverse to each party. Under those circumstances we cannot say that reversible error was committed in permitting the jury to learn of those two adverse rulings.

We have the same view in regard to the statement of the court directing that defendant's counsel "stay within the evidence." It is said that there was no occasion for that admonition as counsel had

not gone beyond the evidence. It is likely that the court intended to say that counsel should stay within the issues instead of using the word evidence. In any event, however, we rule that the statement was not so prejudicial to defendant as to require a reversal of the judgment herein.

■ On the morning of the second day of the trial counsel for defendant exhibited to the court an article which had appeared that morning in the Kansas City Times and in which it was stated that the commissioners had awarded defendant $48,720. Defendant orally moved that the court declare a mistrial and discharge the jury. He argued that the members of the jury had had an opportunity to read the article and that the information as to the amount of the commissioners' award was incompetent and should not become known to the jurors. The motion was overruled.

The final point briefed upon this appeal is that the court erred in refusing to declare a mistrial for the reason stated. It was agreed by counsel that the Kansas City Times was a newspaper of general circulation in Clay County. However, there was no proof or offer of proof that any juror read the article. There was also no showing that any agent or attorney for plaintiff was in any manner responsible for the publication in question. In the absence of a showing that the article had been read by some of the jurors, it should be apparent that the trial court ruled correctly in denying the motion for a mistrial. Moreover, we note that upon similar facts the appellate courts of this state have, in at least three instances, upheld the action of the trial court in refusing to grant a mistrial even though it was shown that some of the jurors had read the newspaper article. See Hollenbach v. McCord, 152 Mo.App. 248, 132 S.W. 1189; Shafer v. Kansas City Rys. Co., Mo.App., 201 S.W. 611; and Partello v. Missouri Pac. R. Co., 240 Mo. 122,

145 S.W. 55. Those cases indicate that it must also be shown that the jurors had formed an opinion or had been influenced (to the prejudice of the movant) by having read the article. It was also pointed out in the Hollenbach case, supra, that it is not within the power of the court to prevent the publication of its proceedings and that, "To hold that under the circumstances the court should set aside the hearing and call another jury would be setting a precedent that might lead to unfortunate results. It would produce an element of uncertainty in many cases, because it could not be known at what time a party litigant might conceive it to be to his advantage, for some cause or another, to take advantage of the fact that some newspaper had published and the jurors read an article in reference to the case that would tend to his prejudice, and ask that the jury be discharged and another summoned in its stead. At the same time it would produce confusion and delay, as well as to increase cost. And besides, a juror should not be considered a proper subject for wrongdoing and weakness. If he is to be intrusted with the responsibility of determining the right and the wrong between litigants and administering justice, he should be credited with that degree of honesty and intelligence necessary for his position. In the absence of proof that the jury were unduly influenced by the publication to the prejudice of defendant, we hold that there was no error in overruling defendant's motion to discharge it." 132 S. W. loc. cit. 1191. As indicated, we rule this point adversely to defendant.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.