CITY OF KIRKWOOD, a Municipal Corporation, v. MAYBELLE C. VENABLE, JOSEPH F. McMAHON, MOORE BROS. CONSTRUCTION COMPANY and FELIG FERRENBACH, INC., a Corporation, Defendants, MAYBELLE C. VENABLE, Appellant.—No. 38358.—173 S. W. (2d) 8.

Division One, July 6, 1943.

Rehearing Denied, July 20, 1943.

*George F. Heege* for appellant.

*J. C. Hoester, Jr.,* for respondent.

462

■

■ DALTON, C.—Action by plaintiff, a municipal corporation organized and existing under Art. 7, Chap. 38, R. S. 1939, to condemn four described lots in said city for a public park. By answer defendant Venable, the owner of the lots, alleged that because of its location the property was "not fit or suitable for public use"; that the proceeding was not brought in good faith; that the described lots were not sought "to be taken for public use and for public parks or squares for the benefit of the residents of the city," but to destroy the property, demolish the improvements, improve the immediate neighborhood and oust defendant's brother from the premises and community; and that, for the reasons stated, the court was without jurisdiction to condemn the described lands.

After a hearing before the court, an order and judgment of condemnation was entered, as follows: "Condemnation granted as prayed." Commissioners to assess the damages were appointed and, upon the filing of their report, the plaintiff paid the amount into court for defendants, and defendants were notified thereof. No exceptions were filed to the report and judgment was entered "that said property stand condemned for public use and purposes and that the City of Kirkwood may take possession of said property." Defendant Venable has appealed.

■ No question is raised concerning the amount of damages, nor with reference to the right of plaintiff to condemn in good faith for public purposes or for a public park (See, St. Louis County Court v. Griswold, 58 Mo. 175), but appellant contends that "the evidence affirmatively showed that the contemplated use of defendant Venable's property was not public"; "that the purpose of the condemnation was . . . for the ulterior purpose of removing an alleged eye-

sore and the presence of defendant's brother''; that the purpose was "not a public one in such sense that the city was authorized to condemn therefor,'' but was "a mere subterfuge to serve a private purpose''; and that "plaintiff's case must fail because there was no evidence of any attempt to agree on a compensation with the owner of the land.''

Since the issue raised concerns the authority of the city, under the pleadings and evidence in the case, to condemn the described property and the power and authority of the court to take title from defendant Venable for the purposes shown by the evidence and to vest it in the plaintiff, title to real estate is directly involved and we have jurisdiction of the appeal. Consolidated School Dist. No. 2 of Clinton County v. O'Malley, 343 Mo. 1187, 125 S. W. (2d) 818, 819; State ex rel. State Highway Commission v. Gordon, 327 Mo. 160, 36 S. W. (2d) 105, 106; Thomas v. Craghead, 332 Mo. 211, 58 S. W. (2d) 281; State ex rel. Palmer v. Elliff, 332 Mo. 229, 58 S. W. (2d) 283, 284.

The action was brought pursuant to the terms of a city ordinance of said city finding it "necessary and desirable to acquire'' the described property "for public park or parks and playgrounds'' and authorizing the acquisition thereof by purchase or condemnation and empowering the city attorney to take the necessary steps to condemn the described lots.

The property is located in what is referred to as the center of the business district of said city. It fronts 200 feet on the north side of Madison Avenue and lies between Madison Avenue and the Missouri Pacific Railroad right of way. It is east of Clay Avenue, on which is located a street car line and a viaduct over the railroad tracks. The property is within 200 feet of city property upon which is located a new city hall, recently completed at a cost of $75,000. Although the property adjoins the switch yards, it is higher than the switch yards and there is a drive between it and the railroad right of way. The only improvement on the property is a two story frame house and "there was a time when it was one of the show places of Kirkwood.'' The house is now old and it has not been painted in thirty to thirty-five years. For more than ten years there have been no repairs and the house is in a dilapidated condition. It caught on fire in October, 1940, and again in March, 1941, and the damage has not been repaired. An old Model T Ford stands in the front yard and has been there six or seven years. The radiator has been removed. There are also two automobile bodies and some baskets and crates and lumber on the property. When the house caught fire, books, newspapers and other things were put out in the yard, where they have remained awaiting repairs to the house. In the meantime they have been covered over with tin and old newspapers. The lots have not been mowed for many years. The weeds and grass have been

permitted to grow, except under some wild plum and mulberry trees, and there they were cut with a scythe. When trees and branches fall in the yard, they are permitted to remain there. There is much rubbish lying around, to wit, leaves, trash, bottles, cans, brickbats and junk. For many years the condition of the property has continually gotten worse and it looks disreputable and unsightly. Because of its close proximity to the railroad tracks, the property is a fire hazard. On account of the collection of rubbish and junk, the property is a menace to the health and safety of the community. The property appears in unseemly contrast to the new city hall.

Since the last fire in March, 1941, the property has been vacant, but previously it was occupied by defendant's brother, who was interested in collecting old newspapers, bottles, street car transfers, automobile license plates and other things of interest to him. Much old furniture, belonging to the former owners of the property, remains in the old house.

Because of the condition of the premises, repeated complaints have been made to the city officers and they have been pressed to remedy the situation. The public generally has complained, different organizations have circulated petitions and other action has been taken. Defendant Venable's brother has been arrested for maintaining a nuisance and for not connecting with the sewer system. He also claims to have been [11] arrested, lectured, threatened, and harassed on other charges. It appears that at one time an insanity proceeding was instituted, but there is little evidence that any of the complaints were carried through to a conclusion.

The city ordinance, authorizing the condemnation of the property for park purposes, takes cognizance of the condition of the property as follows: "And the Council of the City of Kirkwood, Missouri, in view of the fact that the properties, above described, have been improved with an old frame structure which has been partially burned down and destroyed by fire, thus creating a menace to public health and a fire hazard, does hereby declare that an emergency exists within the purview of the Statutes of this State and that, for the immediate preservation of the public health, peace or safety, this ordinance shall be in full force and take effect immediately after its final passage and approval."

It is on the basis of the foregoing evidence that appellant vigorously insists that the proceeding is not in good faith for a public purpose to create the proposed public park, but rather to remove an eye-sore and to serve a private purpose.

There was evidence tending to show that the property could be used as a park; that it was "acceptable from the standpoint of its availability for a small park"; that "it would be a good place for a playground"; that it was needed for tennis courts and playground purposes; that it was "an ideal place" for tennis courts and a "good

place for a playground''; that there were ''no other parks near there''; that the city intended to put four tennis courts, a locker building and benches on the property; that the city would ''not discriminate against the ages of those who play on the courts''; that the condemnation was not a subterfuge; and that it appeared ''the only way to get the property at a reasonable cost'' was by condemnation. Plaintiff's brother, however, testified that the premises were ''very dirty, especially now as there is much traffic on the railroad''; that there was ''a great deal of noise from trains''; and that persons coming to play tennis would have to cross the railroad tracks, the bridge over the railroad tracks or the street car tracks. There was no evidence tending to show that the city did not intend to use the property for park and playground purposes, exactly as testified to by plaintiff's witnesses, nor was there any evidence that the property was not needed for park purposes. The weight of the evidence also indicates the property is suitable for park purposes.

Section 6998, R. S. 1939, provides: ''Private property may be taken by the cities of the third class for public use for the purpose of establishing, opening, widening, extending or altering any street, . . . public park or public square, . . . and for any other necessary public purposes.'' Sections 6999-7010, R. S. 1939, govern the mode of procedure in such cases. See, also, Sec. 6975, R. S. 1939.

Section 20, Art. 2 of the Constitution of Missouri, among other things, provides ''that whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and as such judicially determined, without regard to any legislative assertion that the use is public.'' In compliance with this provision, this court has repeatedly held that whether the use for which property is taken is public or private is a judicial question. City of Savannah v. Hancock, 91 Mo. 54, 57, 3 S. W. 215; City of Cape Girardeau v. Houck, 129 Mo. 607, 618, 31 S. W. 933; City of Caruthersville v. Ferguson (Mo. Sup.), 226 S. W. 912, 914.

Appellant had the right to demand that the court hear the evidence and determine whether or not the purpose of the proceeding was to condemn for a public use or for a private use. City of St. Louis v. Brown, 155 Mo. 545, 555, 56 S. W. 298; Kansas City v. Hyde, 196 Mo. 498, 513, 96 S. W. 201. If the evidence discloses that the proposed use is a private one then there is no right to condemn. Appellant, in support of her contention that the proceeding here was to serve a private purpose, cites Kansas City v. Hyde, supra; St. Louis v. Brown, supra; Aldridge v. Spears, 101 Mo. 400, 406, 14 S. W. 118; St. Joseph Terminal R. Co. v. Hannibal & St. Joseph R. Co., 94 Mo. 535, 542, 6 S. W. 691; and City of Kirksville v. Hines, 285 Mo. 233, 225 S. W. 950, 951. These cases do not support her contention.

■ The necessity, expediency and propriety of exercising the right of eminent domain, either by the state or by the corporate bodies to which the right has been delegated, are questions essentially political in their nature and not judicial. [12] The grant by the legislature to the city of the right to take private property for use as a public park carried with it also the power to determine the necessity for its exercise, and when action has been taken by the proper corporate body or tribunal in any case, *in which the contemplated use is a public one,* it is conclusive upon the courts. See, Simpson v. Kansas City, 111 Mo. 237, 242, 20 S. W. 38; City of Caruthersville v. Ferguson, supra, (226 S. W. 912, 914;) Kansas City v. Liebi, 298 Mo. 569, 591, 252 S. W. 404; So. Ill. & Mo. Bridge Co. v. Stone, 174 Mo. 1, 22, 73 S. W. 453; 18 Am. Jur., Eminent Domain, sec. 105; Lewis on Eminent Domain, Third Edition, Vol. I, p. 502, sec. 255.

In the case of Kansas City v. Liebi, supra, the court said: "In a condemnation proceeding the court having determined that the proposed use is a 'public use,' the expediency and propriety of the enactment under which it is authorized are for the legislative body and not a subject of judicial inquiry. . . . In the case of a municipal ordinance proposing to take property for public use, where the charter of the municipality authorized the proceeding, the passage of the ordinance is conclusive as to the necessity and reasonableness of it. . . . The question for the courts in such cases is whether under its charter powers the municipality has a right to condemn property for the purposes contemplated, and whether the use is a public use." (298 Mo. 569, 598.)

■ While appellant concedes that respondent has the right to condemn for a public purpose and in good faith to acquire lands for a public park, she contends that the proceeding here is "a mere sham and subterfuge for the purpose of concealing the ulterior motive behind the whole matter." Appellant says "the use alleged was public but the proof showed it was private." The evidence bearing on the issue of good faith, however, is sufficient to show that the described property was needed for park purposes; that it was suitable for such purposes; and that the respondent city expects and intends to use it for such purposes. Appellant's evidence only tends to show that the motive back of the passage of the ordinance by the city council for the creation of the city park, and the condemnation of appellant's property for that purpose, was to remedy the unsightly, unhealthy and disreputable conditions existing on the said premises. In other words, it appears that the condition of the premises created a demand for a city park on the property and caused the public generally to apply such pressure on the city officials to remedy the situation as to force the passage of the ordinance for the creation of a park at the particular location. The evidence is directed to the wisdom, expediency or necessity for the exercise of the right to condemn the property for

park purposes. Such evidence is wholly insufficient to establish that the property is being condemned for a private rather than a public purpose.

In Lewis on Eminent Domain, Third Edition, Vol. I, p. 678, sec. 370, it is said: "The courts cannot inquire into the motives which actuate the authorities or enter into the propriety of making the particular improvements." See, also, McQuillin on Municipal Corporations, Second Edition, sec. 1588.

In 20 C. J. 552, sec. 38, it is said: "The motives of the members of a city council are not open to judicial inquiry, except in a case of fraud and collusion with private interests."

In the case of Kessler v. Indianapolis, 199 Ind. 420, 157 N. E. 547, 53 A. L. R. 1, 7, it is said: "In this case, however, the inquiry does not relate to the motives which caused the municipal officers to act, but to the purpose of the taking. While the words motive and purpose are sometimes used as synonymous terms, yet in their application here, there is a clear distinction between them. 'Motive' is that which prompts the choice or moves the will, thereby inciting or inducing action, while 'purpose' is that which one sets before himself as the end, aim, effect or result to be kept in view or object to be attained. The purpose for which private property is condemned is the very basis of the right to condemn."

In Ligare v. Chicago, 139 Ill. 46, 32 Am. St. Rep. 179, 28 N. E. 934, it is said: "We do not deny that the city has power to widen streets, generally, and that when it has undertaken to do so the motives that may have actuated those in authority are not the subject of judicial investigation; but the purpose for which a thing is done is very different from the motives which may have actuated those by whom it is done, and is, in the present instance, a legitimate subject of judicial investigation, for the [13] right to exercise the power of eminent domain is in all cases limited by the purpose for which it shall be exercised,—as thus, private property may be condemned for public use, but it may be shown that the use in fact is not public, but private." See, Kansas City v. Hyde, supra, (196 Mo. 498, 510).

In the case of City of St. Louis v. Brown, supra, this court said: "When it is proposed to take private property for public use, the individual affected has a right to challenge in court the character of the use proposed, and the court will determine whether it be or be not a public use. That is to say, whether or not the use proposed is in its nature a public use, is a judicial question, but whether or not the exercise of the authority in the particular case is expedient or politic is a question for the legislative and executive departments of the city government. [Lewis on Em. Dom., sec. 158.] A good deal of testimony on the part of exceptors was designed to show that the widening of the street was a mere aesthetic idea and of doubtful policy, but with that subject we have nothing to do." (155 Mo. 545, 555.)

The evidence does not convince us that the the contemplated use of the property sought to be condemned for a public park will be used for other than said public purpose, nor does the evidence indicate a lack of good faith on the part of the city to create a city park. We hold that the evidence satisfactorily establishes that the proposed use of the property sought to be condemned is a public one and that the respondent in good faith is taking the property for public park purposes. City of Caruthersville v. Ferguson, supra.

There remains only the question concerning the failure of the evidence to show any attempt to agree with the owner on the amount of compensation. Appellant directs our attention to no statute requiring such a showing to be made as a condition precedent to the exercise of the power. No such requirement is made by the statutes under which this proceeding is brought. No attempt to agree with the owner was pleaded by plaintiff and no objection on that account was raised by defendant's answer. Cases requiring such a showing are based upon special statutes making the specific requirement. There was evidence, however, that the proceeding was necessary to obtain the property "at a reasonable cost." See, So. Ill. & Mo. Bridge Co. v. Stone, supra, (194 Mo. 175, 187). The assignment is overruled.

We find no error in the record before us. The judgment is affirmed. *Bradley* and *Van Osdol, CC.*, concur.

PER. CURIAM:—The foregoing opinion by Dalton, C., is adopted as the opinion of the court. All the judges concur.