STATE of Missouri ex rel. CITY OF CREVE COEUR, a Municipal Corporation, Francis A. Casserly, John W. McVicker, Leo J. Reuther, Edward J. Wirt, Constituting the Board of Aldermen of the City of Creve Coeur, James F. Wilson, Mayor of the City of Creve Coeur, William H. Wyne, Jr., Edward J. Delworth, Attorneys for the City of Creve Coeur, Kenneth Wischmeyer, Building Commissioner of Creve Coeur, Relators,

v.

Honorable Noah WEINSTEIN, Judge of the Circuit Court, St. Louis County, Respondent.

No. 30255.

St. Louis Court of Appeals.

Missouri.

Dec. 3, 1959.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 29, 1959.

Wyne & Delworth, William H. Wyne, Jr., Clayton, for relators.

Thomas, Busse, Weiss, Cullen & Godfrey, Frederick E. Busse, James D. Cullen, Aubrey B. Hamilton, Richard A. Hetlage, Robert O. Hetlage, St. Louis, for respond-'ent.

RUDDY, Judge.

The case before us is an original proceeding wherein relators in their petition for prohibition pray for an order and writ of this court prohibiting respondent, Hon. Noah Weinstein, a Judge of the Circuit Court of St. Louis County, from hearing and considering the allegations and the evidence thereon of the cross-claim and

counterclaim filed in a condemnation action. The counterclaim and cross-claim was filed by defendants, Howard P. Venable and Katie Venable. Constitutional questions are directly raised in the counterclaim and cross-claim. Where constitutional questions are directly raised on appeal, the jurisdiction is in the Supreme Court. However, in proceedings that have for their purpose the issuance of original remedial writs, we have concurrent jurisdiction with the Supreme Court, notwithstanding constitutional questions are directly raised in the pleading under review. V.A. M.S.Constitution, Article 5, Section 4; State ex rel. City of Mansfield v. Crain, Mo.App., 301 S.W.2d 415. The parties concede that jurisdiction to hear this proceeding is in this court.

The relators herein are the City of Creve Coeur, a municipal corporation, and various officials of said municipality.

The events that form the basis of the proceeding before us had their beginning when relator, City of Creve Coeur, filed an action in the Circuit Court of St. Louis County to condemn certain land in the City of Creve Coeur for park and playground purposes under authority of Sections 90.010 and 90.020 RSMo 1949, V.A. M.S., and the applicable provisions of Chapter 88 RSMo 1949, V.A.M.S.

The City of Creve Coeur in its petition for condemnation alleged that it had duly passed Ordinance No. 162, entitled "An Ordinance Providing For The Acquisition Of Property For A Public Park and Playground by Purchase Or Condemnation Within The City Of Creve Coeur, Describing The Property To Be Purchased Or Condemned Therefor." Thereafter follows a description of the property and the owners thereof. The petition sought to condemn two lots owned by the Venables, a tract of land owned by Louis Phillip Dielmann and Mary Dielmann, his wife, and a tract of land owned by Gene Wiley and Marie B. Wiley, his wife. The petition contains a prayer for the appointment of "three disinterested commissioners,

freeholders of property in said City, to assess the damages which said owners may severally sustain by reason of the appropriation and condemnation" of the real estate mentioned in the petition.

After the petition for condemnation and for the appointment of commissioners was filed, defendants, Howard P. Venable and Katie Venable, filed a pleading styled "Separate Answer of Howard P. Venable and Katie W. Venable To Plaintiff's Second Amended Petition For Appointment Of Appraisers, And Separate Counterclaim and Cross-Claim of Howard P. Venable and Katie W. Venable." In connection with the counterclaim and cross-claim these defendants joined as "third-party defendants" the members of the Board of Aldermen of the City of Creve Coeur, the Mayor, Building Commissioner, and City Attorney of said city and the Special Assistant to the City Attorney. A "Third Party Summons" was issued by the court and served on the aforementioned "third-party defendants." The Venables in their answer "by way of additional affirmative defense," incorporated by reference the allegations contained in certain paragraphs of their counterclaim and cross-claim. The prayer of said counterclaim and cross-claim asked "that third party defendants and the City of Creve Coeur, be enjoined from withholding a Plumbing Permit for Lot 10 * * * and from further proceeding with * * * the condemnation suit now pending * * * and that all third party defendants be enjoined from interfering with and conspiring against defendants, Howard and Katie Venable, to deprive them of their constitutional and civil rights related to residential housing in said city; * * *."

The City of Creve Coeur and the third party defendants, brought in under the counterclaim and cross-claim, filed motions to strike the allegations of the counterclaim and cross-claim and to dismiss said counterclaim and cross-claim. These motions were overruled by the trial court.

The City of Creve Coeur and the "third party defendants" as relators in the instant

prohibition proceeding contend that the allegations and matters contained in the counterclaim and cross-claim filed by the Venables and the relief prayed for therein are beyond the trial court's jurisdiction and ask that our preliminary rule in prohibition heretofore issued be made permanent. Our preliminary writ of prohibition prohibited the trial judge from "hearing or considering the allegations and evidence thereon of the cross-claim and counterclaim * * *." The respondent Judge in his return contends that jurisdiction to hear and decide the matters contained in the counterclaim and cross-claim are lodged in the trial court and that our preliminary rule in prohibition should be dissolved.

The issues presented require an examination of the allegations contained in the counterclaim and cross-claim in question. The pleading containing the counterclaim and cross-claim is lengthy and contains repetitive allegations. We think the following is a fair summary of the allegations in the pleading under review.

It was alleged by defendants, Howard P. Venable and Katie W. Venable, his wife, that they were the owners of two of the lots sought to be condemned and that these lots had been platted and zoned for residential purposes. These defendants had commenced construction of a residence on one of the lots pursuant to a building permit issued to the Ashby Developing and Investment Corporation and said residence is partially completed.

It is further alleged in said counterclaim and cross-claim that plaintiff and the third party defendants have combined and conspired to deprive these defendants of their personal and property rights secured to them by the Constitution and Laws of the United States and the Constitution and Laws of the State of Missouri because defendants are members of the Negro race.

It is further alleged that because of this conspiracy and combination defendants have been denied the right to choose, free from racial discrimination, the City of Creve Coeur in which to make their home.

The overt acts constituting the alleged unlawful scheme, combination and conspiracy as particularized in said counterclaim and cross-claim, we summarize in some respects and in others we recite the allegations verbatim.

It is alleged that plaintiff and third party defendants have:

"authorized and directed emissaries * * * to force said defendants to sell their property to private persons under intimidation and threat of community coercion, official coercion, and condemnation * * *";

refused to issue to defendants and their contractor a plumbing permit to which they were entitled under the ordinances of the City of Creve Coeur and applicable regulations of the Metropolitan Sewer District;

administered the affairs of said city for the purpose of discriminating against said defendants;

enacted "a condemnation ordinance solely for the purpose * * * of denying to them (the Venables) the exercise of their constitutional rights of residence in the City of Creve Coeur * * *";

authorized the City Attorney for said City "to institute an action in condemnation against defendants" and "have instituted" a condemnation action and as a result "threaten to condemn and take" defendants' property;

consummated a pattern of illegal discrimination "capstoned by the enactment and threatened consummation of the condemnation ordinance, and proceedings herein referred to, by the exercise of arbitrary and unfettered discretion having no standards nor guides, either in said ordinance or official records, to justify legal con-

duct and have authorized and initiated condemnation proccedings * * *" (Emphasis added);

"Yielded to the importunities of citizens of Creve Coeur, *motivated* solely by reason of racial prejudice against prospective Negro residents * * *" (Emphasis added);

incurred and authorized obligations payable from municipal funds ostensibly for park purposes; "incurred municipal obligations and expended municipal funds for non-public purposes" in aid of private individuals and associations;

"deliberately ignored warnings concerning the establishment of an unfortunate precedent in handling a situation that will inevitably reoccur * * *";

"Hastily chose a site for alleged park condemnation purposes" and "disregarded the unsuitable topography, location and cost of the area sought to be condemned * * *";

forced, by reason of the acts aforesaid, the withdrawal of other Negroes proposing to build and live in the City of Creve Coeur;

"initiated no effort to include the site sought to be condemned for park purposes" within a cooperative program with municipalities located in St. Louis County;

acquiesced on the basis of passion, bias and prejudice in a scheme, device and artifice of a Citizens-Committee whose operation concerned the solicitation and payment of donations to acquire the real estate owned by and surrounding the defendants in order to eliminate occupancy by said defendants;

"authorized, instituted, and conducted condemnation proceedings for a private and not a public purpose";

"illegally granted to residents of Creve Coeur, * * * special and exclusive rights, privileges, and immunities, to and involving private residential housing in the City of Creve Coeur, seeking to prevent occupancy thereof by Negroes";

joined with other persons unknown to defendants in furtherance of the combination and conspiracy alleged;

committed a fraud on said defendants in passing said ordinance and that said ordinance "is merely the product of legislative whim and caprice, violates a common right of defendants, and imposes a burden on them without corresponding benefit to them or the community in which they seek to live * * *."

It is further alleged in said counterclaim and cross-claim that because of the combination and conspiracy and the overt acts committed in the consummation thereof, said defendants are being deprived of liberty and property, without due process of law; are denied the equal protection of the laws and the privileges and immunities of citizens of the United States and the State of Missouri; and are being denied the right to protection of person and property, all contrary to the Constitution and Laws of the United States and the State of Missouri, to wit: Article IV, Section 2 of the Constitution of the United States and the 4th, 5th and 14th Amendments thereof; Chapter 21 of Title 42 U.S.C.A. and particularly Sections 1981–1988 thereof, inclusive, and Article I, Sections 2, 10, 26 and 28, and Article VI, Sections 23, 25 and 26 of the Constitution of Missouri.

It is further alleged that the ordinance condemning defendants' property and the condemnation proceedings pursuant thereto, constitute an unlawful seizure of and threatened seizure of their property and abridges their privileges of national citizenship and that an award in money is not, under the circumstances, just compensation.

In the points relied on by relators they contend there is no authority permitting the joinder of third party defendants in a condemnation proceeding and further contend that condemnation is an action sui generis and does not by its nature authorize a counterclaim or cross-claim. We need not decide if third party defendants may be joined or if a counterclaim or cross-claim is permissible in a condemnation action because we think another point raised by relators is sufficient to sustain their contention that the respondent has no jurisdiction of the matters contained in the counterclaim and cross-claim filed by the Venables.

In this point relators contend that the allegations of the counterclaim and cross-claim simply raise a question of the motive of the legislative body of the City of Creve Coeur in passing the ordinance which condemned the property of the Venables and the other land adjoining the property owned by the Venables. It is the position of the relators that courts cannot inquire into the motives which actuated the legislative body of the City of Creve Coeur in passing the ordinance establishing a public park and playground and further that courts cannot inquire into the propriety or necessity for establishing the park and playground. The authority cited and relied on by relators is City of Kirkwood v. Venable, 351 Mo. 460, 173 S.W.2d 8. It will be noted that the appellant's name in the City of Kirkwood case, supra, is the same as that of the defendants who filed the counterclaim and cross-claim in the condemnation action filed by the City of Creve Coeur. However, we have been informed there is no relationship between the respective parties.

The case of the City of Kirkwood v. Venable, supra, was an action by the City of Kirkwood to condemn four lots in said city for a public park. The defendant Venable, owner of the lots, in her answer alleged that because of its location the property was "not fit or suitable for public use"; that the proceeding was not brought in good faith; that the lots were not sought "to be taken for public use and for public parks or squares for the benefit of the residents of the city," but to destroy the property, demolish the improvements, improve the immediate neighborhood and oust defendant's brother from the premises and community; and that, for the reasons stated, the court was without jurisdiction to condemn the described lands. The trial court entered an order and judgment of condemnation.

On appeal defendant-appellant contended that "the contemplated use of defendant Venable's property was not public"; "that the purpose of the condemnation was * * for the ulterior purpose of removing an alleged eye-sore and the presence of defendant's brother"; that the purpose was "not a public one in such sense that the city was authorized to condemn therefor," but was "a mere subterfuge to serve a private purpose"; and appellant gave other reasons why the condemnation action must fail. The lots and the improvements on them, sought to be condemned, had through the years become unsightly and looked disreputable.

The Supreme Court after pointing to the authority which gave to the City of Kirkwood the right to take private property for the establishment of a public park or public square, then said:

"Section 20, Art. 2 of the Constitution of Missouri, Mo.R.S.A., among other things, provides 'that whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public, shall be a judicial question, and as such judicially determined, without regard to any legislative assertion that the use is public.' In compliance with this provision, this court has repeatedly held that whether the use for which property is taken is public or private is a judicial question.

\*   \*   \*   \*   \*   \*

"The necessity, expediency and propriety of exercising the right of eminent domain, either by the state or by the corporate bodies to which the right has been delegated, *are questions essentially political in their nature and not judicial.* The grant by the legislature to the city of the right to take private property for use as a public park carried with it also the power to determine the necessity for its exercise, and when action has been taken by the proper corporate body or tribunal in any case, in which the contemplated use is a public one, *it is conclusive upon the courts.*

\*   \*   \*   \*   \*   \*

"While appellant concedes that respondent has the right to condemn for a public purpose and in good faith to acquire lands for a public park, she contends that the proceeding here is 'a mere sham and subterfuge *for the purpose of concealing the ulterior motive* behind the whole matter.' Appellant says 'the use alleged was public but the proof showed it was private.' \* \* \* Appellant's evidence only tends to show that the *motive back of the passage of the ordinance* by the city council for the creation of the city park, and the condemnation of appellant's property for that purpose, was to remedy the unsightly, unhealthy and disreputable conditions existing on the said premises. \* \* \* The evidence is directed to the wisdom, expediency or necessity for the exercise of the right to condemn the property for park purposes. Such evidence is wholly insufficient to establish that the property is being condemned for a private rather than a public purpose.

"In Lewis on Eminent Domain, Third Edition, Vol. I, p. 678, § 370, it is said: *'The courts cannot inquire into the motives which actuate the authorities or enter into the propriety of making the particular improvement.'* See, also, McQuillin on Municipal Corporations, Second Edition, § 1588." (Emphases added.) (173 S.W.2d loc. cit. 11, 12.)

The order and judgment of condemnation was affirmed by the Supreme Court.

■ In the case of the City of Kirkwood v. Venable, supra, the Supreme Court quoted from the case of Kessler v. City of Indianapolis, 199 Ind. 420, 157 N.E. 547, 549, 53 A.L.R. 1, 7, wherein the distinction between motive and purpose was clearly defined. In that case the court said:

"In this case, however, the inquiry does not relate to the motives which caused the municipal officers to act, but to the purpose of the taking. While the words motive and purpose are sometimes used as synonymous terms, yet in their application here there is a clear distinction between them. 'Motive' is that which prompts the choice or moves the will thereby inciting or inducing action, while 'purpose' is that which one sets before himself as the end, aim, effect, or result to be kept in view or object to be attained. The purpose for which private property is condemned is the very basis of the right to condemn."

■ In the case of the City of St. Louis v. Brown, 155 Mo. 545, 56 S.W. 298, 299, the Supreme Court said:

"When it is proposed to take private property for public use, the individual affected has a right to challenge in court the character of the use proposed, and the court will determine whether it be or be not a public use. That is to say, whether or not the use proposed is, in its nature, a public use, is a judicial question; but whether or not the exercise of the authority in the particular case is expedient or politic is a question for the legislative and executive departments of the city government."

The Supreme Court in the case of Kansas City v. Liebi, 298 Mo. 569, 252 S.W. 404, 28 A.L.R. 295, held that the propriety, expediency and necessity of a legislative act are purely for the determination of the legislative authority and are not for determination by the courts. The court also held that a legal presumption of validity attends the ordinance passed by the municipal legislative body.

Other cases decided by the Supreme Court wherein the same pronouncements were made are City of Caruthersville v. Ferguson, Mo., 226 S.W. 912; Southern Illinois & M. Bridge Company v. Stone, 174 Mo. 1, 73 S.W. 453, 63 L.R.A. 301; St. Louis County Court v. Griswold, 58 Mo. 175.

■■ The cases examined by us clearly hold that once it is established that the use for which private property is appropriated is public, the judicial authority of the court is exhausted. This means that the courts have no authority to pass upon the motives of a legislative body in enacting a statute or an ordinance and are powerless to consider the question of what reasons actuated the legislative body in the passing of the statute or the ordinance, as the case may be.

While all of the Missouri cases examined by us hold as aforesaid, the only case wherein the pleading and proof challenged the validity of the motives of the legislative body was the City of Kirkwood v. Venable, supra. It was there held, as we pointed out, that when an ordinance condemns private property and it is found by the court that the contemplated use of the property is public, then the action taken by the legislative body "is conclusive upon the courts." It will be observed that the Supreme Court quoted approvingly from Lewis on Eminent Domain, Third Edition, Vol. I, p. 678, and we repeat this quotation: " 'The courts cannot inquire into the motives which actuate the authorities or enter into the propriety of making the particular improvement.' "

The language of the Supreme Court in the City of Kirkwood case leaves no room for exceptions to or relaxation of the rule announced. We have no authority to create exceptions in the face of what we consider to be a clear mandate, where the motives of a legislative body are challenged. It is our duty to follow the rule laid down for us by the Supreme Court of this state. We have no other course to follow.

■ The rule of law as laid down by the Supreme Court of this state, finds support in other jurisdictions. The Supreme Court of the United States, in the cases cited below, holds that the necessity and expediency of taking private property for public use is a legislative and not a judicial question and is purely political, is not open to discussion, and that a hearing thereon is not essential to due process of law in the sense of the 14th Amendment to the Constitution of the United States. Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167; Rindge Co., v. County of Los Angeles, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186. The Supreme Court of the United States also holds that the condemnation of lands for public parks is now universally recognized as a taking for public use. Rindge Co. v. County of Los Angeles, supra; Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170.

Many opinions may be found in the cases decided by the various United States Circuit Courts of Appeals, some of which are cited below, which contain holdings similar to those announced by the Supreme Court of the United States and the Supreme Court of this state. See United States v. Certain Real Estate etc., 6 Cir., 217 F.2d 920; Barnidge v. United States, 8 Cir., 101 F.2d 295; United States v. Threlkeld, 10 Cir., 72 F.2d 464, certiorari denied 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708.

We now examine the counterclaim and cross-claim in the light of the rule laid down for us by the Supreme Court of this state.

We think a fair analysis of the pleading under review discloses that the overt acts complained of, which it was alleged constituted the unlawful scheme, combination and conspiracy, antedated the passage of the ordinance. This was made clear from the allegation in the counterclaim and cross-claim that the pattern of illegal discrimination was "capstoned" by the enactment of the ordinance. Webster's New International Dictionary, Second Edition, Unabridged, defines "capstone" when used in the sense contemplated in the pleading as "The final or crowning part; finishing stroke." Thus, the Venables alleged that the enactment of the ordinance was the finishing stroke that followed the acts constituting the unlawful action, combination and conspiracy.

Again in another part of the pleading it is alleged that the legislative body of the City of Creve Coeur "yielded to the importunities of citizens of Creve Coeur, *motivated* solely by reason of racial prejudice against prospective Negro residents." This allegation clearly shows that the acts complained of, namely, the importunities of citizens, took place prior to the enactment of the ordinance condemning the property of the Venables.

It is significant to note that some of the allegations in the counterclaim and cross-claim parallel in language and in substance the allegations and contentions of the defendant in the City of Kirkwood v. Venable, supra.

In the instant case the defendants in their counterclaim and cross-claim allege that the legislative body "hastily chose a site for park condemnation purposes" and "disregarded the unsuitable topography, location and costs of the area sought to be condemned." In the City of Kirkwood case the defendant alleged that the property was "not fit or suitable for public use." Also in the City of Kirkwood case it was alleged that the purpose of condemning defendant's property was to "oust defendant's brother from the premises and community." In the instant case it was alleged

in the counterclaim and cross-claim that the ordinance was enacted "solely for the purpose * * * of denying to them (the Venables) the exercise of their constitutional rights of residence in the City of Creve Coeur." The respective allegations just noted are similar.

In the City of Kirkwood case it was contended on appeal "that the contemplated use of defendant Venable's property was not public"; "that the purpose of condemnation was * * * for the ulterior purpose of removing an alleged eye-sore and the presence of the defendant's brother"; "that the purpose was not a public one in such sense that the City was authorized to condemn therefor" but was "a mere subterfuge to serve a private purpose." Allegations comparable to those are found in the pleading under review herein. The Venables in their counterclaim and cross-claim allege that the legislative body "authorized, instituted, and conducted condemnation proceedings for a private and not a public purpose"; that said ordinance is "merely the product of legislative whim and caprice, violates the common right of defendants, and imposes a burden on them without corresponding benefit to them or the community in which they seek to live * * *"; and, that municipal funds were authorized and expended for "non-public purposes."

We cannot escape the conclusion that the principal allegations of the counterclaim and cross-claim filed by the Venables in the instant case parallel in meaning, if not in exact language, the allegations and contentions made in the case of City of Kirkwood v. Venable, supra. The whole theory of the counterclaim and cross-claim filed by the Venables is that the legislative body of the City of Creve Coeur was actuated by motives that were improper. The allegations in the counterclaim and cross-claim present an issue over which the trial court lacks jurisdiction.

We have carefully studied the cases cited by the respondent in support of his

position that the trial court has jurisdiction to consider the matters contained in the counterclaim and cross-claim of the Venables. Before commenting on these cases relied on by the respondent it should be noted that all cases must be read in the light of the facts and the issues before the court when rendering its opinion.

Respondent's principal reliance is the case of Kansas City v. Hyde, 196 Mo. 498, 96 S.W. 201, 7 L.R.A.,N.S., 639. An examination of the facts and issues before the court in that case discloses that the court was investigating the purpose to which the proposed streets, sought to be condemned in the ordinance, were to be put. The entire inquiry in that case was whether or not the legislative body could create a street for the special benefit of a given number of people as against its use by the general public. The court held that no use of the property condemned could be granted if it was inconsistent with the use of the general public. The gist of the court's ruling was that the court in determining the use to which the condemned property was to be put could "look through a sham and see the truth" in order to determine if the property condemned was going to be put to a private use. The sole issue involved in the case was whether or not the property sought to be condemned was being taken for a public or a private use. The case did not involve any issue or question of motive actuating the enactment of the ordinance condemning the property. For support of our understanding of the issue before the court in the case of Kansas City v. Hyde, supra, see Kansas City v. Aronson, Mo., 282 S.W.2d 464.

In the case of Glasgow v. City of St. Louis, 107 Mo. 198, 17 S.W. 743, 744, relied on by respondent, the question before the court was whether "the officers and agents of the city combined with the defendants to wrong and injure the plaintiffs and the public by vacating the street and *converting the same to private use* * * *." The sole issue decided by the Supreme Court was whether the land condemned was to be used for a public or private purpose. The court ruled that "the municipal assembly, in enacting the ordinance, intended to aid and foster a large manufacturing industry; but it is equally clear that the ordinance was passed with due regard to the public interests."

Another case relied on by respondent is State ex rel. State Highway Commission v. Curtis, 359 Mo. 402, 222 S.W.2d 64, loc. cit. 68. In that case the Supreme Court stated the issue before it in the following language:

"As we understand respondent's brief, he contends that relator's petition shows that it is attempting to take more land than reasonably necessary * * that the excess of land over what is so reasonably necessary will not be taken for public use; that the question of 'public use' is a judicial question which respondent had jurisdiction to determine * * *."

The Supreme Court in disposing of the issue presented said:

"The power to locate a state highway, to determine its width * * * and the extent of land necessary for economical and proper construction are vested in the sound discretion of the State Highway Commission, uncontrolled by the courts except to compel strict compliance with the statutes and to prevent the taking of private property for a private or non-public use."

There was no issue of motive before the court, the sole issue being whether the land was taken for a private or non-public use.

The same must be said about the case of State ex rel. State Highway Commission of Missouri v. Shultz, 241 Mo.App. 570, 243 S.W.2d 808, cited by respondent, wherein the facts and issues before the court were similar to those before the court in the Curtis case, supra. In the Shultz case the Springfield Court of Appeals relied, inter alia, on the statements we have quoted above from the Curtis case.

Lawrence County, on Behalf of Tunnell v. Johnson, Mo., 269 S.W.2d 110, 111, cited by respondent, was dismissed by the Supreme Court because there was no final judgment in the case and therefore the appeal was dismissed. However, the court did point out that the only question presented was "whether the taking of defendants' land is for a public or private use * * *."

Respondent cites as supporting authority the case of Kansas City v. Reinwald, Mo., 270 S.W.2d 863, 869. The sole issue before the court in that case was clearly one of use of the property sought to be taken. The Supreme Court held that "because the public nature of the contemplated use is patent, the judgment of dismissal" of the lower court was erroneous. The lower court had entered an order dismissing the petition of the City of Kansas City seeking to condemn certain land.

The final Missouri case relied on by respondent is Glueck Realty Company v. City of St. Louis, Mo., 318 S.W.2d 206. This was a suit by a taxpayer to enjoin the City of St. Louis and city officials from carrying out the terms of city ordinances providing for acquisition and condemnation of realty for off-street parking facilities and the issuance of revenue bonds for financing acquisition of the realty and construction of the parking facilities. The suit also asked for a declaratory judgment that said city ordinances were invalid. The trial court dismissed the action. The Supreme Court in affirming the action of the trial court held that the plaintiff-taxpayer had a complete and adequate remedy in the condemnation proceedings and could not maintain the action under review. We cannot conceive what support respondent gains from this case, because, here again, the only issue presented by the taxpayer's petition is found in the allegation "that the purposes of the ordinances were not public but private purposes, intended and designed to serve the private interests of specific department stores and banks * * *." The sole issue presented by the petition was

whether the property was being taken for private rather than public purposes.

Another case urged by respondent as authority for his position is Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 1404, 3 L.Ed.2d 5. The case involved the enforcement of an order of the Supreme Court of the United States contained in an opinion of that court (Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873) wherein the District Courts were directed to require " 'a prompt and reasonable start toward full compliance,' and to take such action as was necessary to bring about the end of racial segregation in the public schools 'with all deliberate speed.' "

The Little Rock (Arkansas) District School Board adopted a plan of desegregation which was approved by the District Court (Aaron v. Cooper, 143 F.Supp. 855) and affirmed by the United States Circuit Court of Appeals, 8 Cir., 243 F.2d 361. When the School Board sought to go forward with its plan, other state authorities pursued a program designed to prevent racial desegregation in the schools. An amendment to the State Constitution was passed "commanding the Arkansas General Assembly to oppose 'in every Constitutional manner the Un-constitutional desegregation decisions' " of the United States Supreme Court. Pursuant to this amendment to the Constitution the Arkansas General Assembly passed a law relieving school children from compulsory attendance at racially mixed schools and a law establishing a State Sovereignty Commission. Other actions were taken by the Governor of the State of Arkansas and other state authorities designed to prevent the enforcement of the School Board's plan. The passing of the amendment to the Constitution, the laws passed by the Arkansas General Assembly and the actions of the Governor and others were actions that on their face bespoke defiance of the School Board's plan drafted pursuant to the mandate of the Supreme Court in Brown v. Board of Education, supra. These actions were a

direct attempt to nullify the mandate of the Supreme Court of the United States. The facts before the court did not involve the right of a legislative body to condemn property. The statements by the court in no way overrule or add exceptions to the rule laid down by it in Joslin Mfg. Co. v. City of Providence, supra, and Rindge Co. v. County of Los Angeles, supra.

■ We are aware of the seriousness of the charges contained in the counterclaim and cross-claim filed by the Venables and because of the gravity of the allegations we have conducted an exhaustive research to determine if an exception to the rule, as announced in the City of Kirkwood case, was authorized. We found no authority authorizing an exception, and none has been cited to us by respondent. The motive which actuates and induces the legislative body to enact legislation is wholly the responsibility of that body and courts have no jurisdiction to intervene in that area. City of Kirkwood v. Venable, supra.

■ The ordinance passed by the City of Creve Coeur condemns the property for use as a public park and playground. If the land is to be used for this purpose, there is no doubt about it being taken for a public use. However, nothing we have said in this opinion will prevent the Venables from showing as a defense to the condemnation action that the property condemned will not be used as a public park and playground.

In view of what we have said, no cause has been shown by respondent why a final judgment in prohibition should not be entered. The preliminary rule of prohibition heretofore issued should be made permanent. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.