**Ida Laura BUECHE, Appellant,**

v.

**KANSAS CITY, Missouri, a Municipal Corporation, Respondent.**

**No. 57854.**

Supreme Court of Missouri, En Banc.

Feb. 12, 1973.

Rehearing Denied April 9, 1973.

James W. Jeans, Kansas City, for appellant.

Aaron A. Wilson, City Counselor, James A. Burr, Associate City Counselor, Kansas City, for respondent.

FINCH, Chief Justice.

Kansas City, Missouri, a constitutional charter city, brought suit to condemn certain permanent and temporary easements for construction and maintenance of a pollution control project. In a trial involving the condemned property of appellant, Ida Laura Bueche, a six-man freeholder jury returned a verdict of no damages. From that decision she appealed to the Missouri Court of Appeals, Kansas City District. That court affirmed on the basis of previously decided cases, but ordered a transfer to this court pursuant to Article V, § 10, Constitution of Missouri, V.A.M.S., to provide an opportunity for reexamination of existing law.

It is settled that constitutional charter cities, "in the enjoyment of their right of home rule may adopt in their charter * * * whatever provisions for the exercise by the city of the right of eminent domain they see fit, free from control of the General Assembly, and their charter provisions have the same force and effect as an act of the General Assembly as long as they are consistent with the Constitution and the laws of the state * * *." Kansas City v. Webb, 484 S.W.2d 817, 823 (Mo. banc. 1972). Kansas City adopted condemnation provisions as Article VI of its Charter. Acting pursuant thereto, the city council enacted an ordinance providing for condemnation of the property interests required for this project. The ordinance provided that just compensation for the easements taken should be assessed and paid in the manner provided in Article VI of the Charter, and that "the proceedings therefor shall be instituted and prosecuted in the Circuit Court of Missouri, Sixteenth Judicial Circuit, *in the manner authorized by Article VI of said Charter, by provisions of Chapter 523 of the Revised Statutes of Missouri, 1959, as amended (or as may be supplemented by Rule 86, et seq., of the Rules of the Supreme Court of Missouri, as amended)*." (Emphasis supplied.)

Suit was instituted. Thereafter, a trial as to the Bueche tract was held in which, as authorized in Article VI, sections 128 and 142 of the Charter, a jury of six freeholders was empaneled.[1] The city called

---

1. Sections 128 and 142, Article VI, of the Charter provide as follows:

"Sec. 128. Power of eminent domain.

"The city may exercise the power of eminent domain and the power of determining the damage caused to property by any public work or improvement or use, or restriction of use, and the power of making and levying special assessments, in the manner prescribed in this charter, or in any other lawful manner. And whenever any property, land, easement, right-of-way, use or right of any character is taken or damaged by the city for public use, just compensation shall be paid to the owner or owners thereof. Such compensation shall be ascertained and assessed by a jury of six (6) freeholders of the city, in the manner provided in this charter, or as otherwise provided by law. But nothing in this article contained is intended or shall be construed as in any way or degree limiting or defining the city's rights and powers under its police power, or as requiring the payment of compensation to any person affected by the exercise of such police power."

"Sec. 142. Jury empaneled.

"Upon the day fixed by the order and notice for the empaneling of a jury, or upon any day thereafter to which the proceedings in said cause have been continued or adjourned, the court shall empanel a jury of six (6) disinterested freeholders of the city, who shall receive the same compensation as other jurors in such court. The term 'disinterested freeholder' as used herein, shall not be so construed as to disqualify any person for service as such juror because of the fact that he is a trustee in a deed of trust upon property taken or damaged or within the benefit district in said proceedings."

as witnesses an employee of the city engineer's office and an employee of the pollution control department, who explained the project and identified various exhibits, including specifications and contract documents which, together with the ordinance providing for the condemnation, were offered in evidence. The city offered no witnesses on valuation, but the jurors did view the property pursuant to the authorization in Article VI, Section 144 of the Charter.[2]

When the city rested its case, the landowner moved for dismissal of the action on the ground that no evidence had been offered by the city to show failure of the landowner and the city to agree on compensation, as required by Supreme Court Rule 86, V.A.M.R., and § 523.010, RSMo 1969, V.A.M.S. Said motion was overruled and a similar motion at the close of all the evidence was overruled.

The landowner offered certain testimony as to use and valuation of the property involved, following which the case was submitted to the jury on the basis of Instructions 1 and 2 offered by the city. After argument, the jury returned a verdict finding that the landowner had suffered no actual damages as a result of the condemnation of the easements and should receive nothing.

We decide this case as though it came here on direct appeal. Article V, § 10, Constitution of Missouri. Accordingly, we consider those questions which are briefed on appeal.

The first such question is whether the trial court erred in overruling the landowner's motion to dismiss on the ground that the city failed to plead or prove that condemnor and condemnee were unable to agree upon compensation to be paid for the easement.

In City of Kirkwood v. Venable, 351 Mo. 460, 173 S.W.2d 8 (1943), this court held that in the absence of a statutory requirement that condemnor city allege and prove an unsuccessful attempt to agree with the owner on the amount of compensation, the city need not allege or prove such fact. Subsequently, in Mayor, etc. of City of Liberty v. Boggess, 321 S.W.2d 677, 680 (Mo.1959), this court said: "It is also our view that plaintiff was not required to allege and prove that it attempted to agree with defendant on the amount of compensation. Such a showing is not required unless it is specified in the statutory or charter provisions upon which the proceedings are based. City of Kirkwood v. Venable, 351 Mo. 460, 173 S.W.2d 8."

The opinion in the foregoing City of Liberty case was handed down March 9, 1959. Shortly thereafter, on July 1, 1959, this court promulgated Missouri Rules of Civil Procedure which had been drafted by a special committee appointed several years before. Said rules became effective April 1, 1960. Included was Rule 86, entitled "Condemnation Proceedings." Its scope was described in Rule 86.01, as follows: "In all condemnation proceedings, except those in instances where special provisions to the contrary are, or may hereafter be, provided for by charters or ordinances of those cities having constitutional charters, the procedure to be followed shall be that provided for by these rules."[3]

---

2. Section 144, Article VI, of the Charter provides as follows:
 "Sec. 144. Hearing; evidence for jury.
 "At the hearing of said cause the parties interested may submit evidence to said jury of freeholders [provided for in section 142] touching the matters under consideration. Such jury may examine personally each piece of property described on the map or plat filed in said cause as aforesaid, and all property claimed to be damaged, and the property, if any, to be assessed with benefits; and the city engineer, the director of public works, or the superintendent of parks, or any assistant of any of them, may accompany such jury for the purpose of pointing out the property aforesaid."

3. A Committee Note following Rule 86.01 further explained the purpose and scope of Rule 86, as follows:
 "The rules relating to condemnation have been redrafted to provide for a single

In this connection, we further note that while some of the rules which were promulgated were shown as being the same, or substantially the same, as earlier rules or statutory provisions, the change tables at page 52 of the pamphlet containing the rules described Rules 86.01 through 86.08 as new provisions in the rules.

 It seems clear from the foregoing that the committee intended, in the interest of uniformity, that Rule 86 should apply to all condemnation cases, including suits by constitutional charter cities, unless such cities expressly provide to the contrary in their charter or by ordinance. That intention was adopted by this court when it accepted the committee report and promulgated the rules. As the landowner points out, there are no provisions in the Kansas City Charter or ordinance which expressly provide that Rule 86 shall be inapplicable. To the contrary, language in the condemnation ordinance would seem to expressly make it applicable. Hence, because Rule 86 is expressly applicable to the special charter condemnation at bar, Rule 86.04, which requires the condemnation petition shall contain "a statement either that the condemner or owner can not agree on the proper compensation to be paid or that an owner is incapable of contracting, is unknown, can not be found or is a non-resident of the state," must be applied. This, of course, represents a change from the rule announced in the Kirkwood and City of Liberty cases.

Such holding is not inconsistent with or detrimental to the idea of providing an opportunity for the charter city to fashion its own form of government, including the method of condemning property. The requirement that the petition allege inability by negotiation to agree on compensation is simply an effort to avoid unnecessary litigation. If the parties cannot agree, then a condemnation suit can be maintained and tried, but a requirement that there be an attempt to settle prior to utilizing the state's courts for actual litigation is not in any wise an unreasonable restriction on a charter city. In any event, Rule 86 itself permits the city to provide expressly that it is not applicable.

 In view of the fact that confusion could and apparently did exist as to whether Rule 86 superseded what this court said in the City of Liberty case with respect to charter cities,[4] and in view of the conclusion we reach whereby we award the landowner a new trial on account of error in instructions, we have concluded that it would not serve the interests of justice to hold in this case that this suit must be dismissed for failure of the petition to allege a prior unsuccessful effort to agree upon damages. For that reason, we deny relief to appellant on this point. However, we do hold that Rule 86 is applicable to constitutional charter cities insofar as not expressly rejected, as provided in the rule, and that from and after the date of the publication of this opinion in the Reporter System, petitions filed by constitutional charter cities must allege an unsuccessful effort to agree upon compensation, unless, of course, in accordance with Rule 86, the charter city expressly rejects that requirement.

The landowner's second contention is that Supreme Court Rule 70.01 was violated by the use of Instructions 1 and 2 on the issue of damages in lieu of MAI 9.02, which was the prescribed instruction in

method of condemning property. Therefore there has been a grouping of some provisions from various sections. An attempt has been made to provide a fair procedure for all concerned. Provisions of constitutional charters and ordinances based thereon are not superseded because of the doubtful legality of action annulling constitutional charter provisions. Cities with Constitutional Charters may be subject to this Rule 86, by express adoption thereof or by the absence of special contrary provisions."

4. Kansas City has continued to follow the rule in City of Liberty to the present time and the Court of Appeals opinion in this case treated that case as governing.

condemnation suits where only part of the property is taken.

It is well settled that when a MAI instruction is applicable, its use is mandatory. Brown v. St. Louis Public Service Co., 421 S.W.2d 255 (Mo.1967). MAI 9.02 is captioned "Damages—Eminent Domain —Part of Property Taken." It tells the jury to award the landowner the difference between the fair market value of his property immediately before the taking and the value of his remaining property immediately after such taking, which difference in value is the direct result of the taking and the uses which the condemnor has the right to make of the property taken.

The Committee's Comment following MAI 9.02 makes it clear that the use of this instruction is mandatory in such a situation as that presented in this case. That Comment is as follows:

"This form shall be used where only part of defendant's property is taken. It authorizes damages for the value of the property condemned and the resulting damage to the remaining property.

"This instruction is appropriate whether or not special benefits to defendant's remaining property are in issue. The value of defendant's remaining property after the partial taking may well be increased by the new contiguous highway or park. This, of course, reduces the condemnee's damages. If special damages were then deducted from this new value, it would amount to deducting the benefits twice.

"The Committee considered preparing a separate special benefits instruction but rejected the idea because special benefits can be covered by argument within the framework of the above instruction."

In State ex rel. Kansas City Power & Light Co. v. Campbell, 433 S.W.2d 606 (Mo.App.1968), the court expressly held that when only part of a landowner's property is taken, MAI 9.02 must be given in condemnation proceedings under general state law.

The issue has not been resolved by any Missouri appellate court in a case involving a constitutional charter city. The question was raised but not decided in Kansas City v. Cone, 433 S.W.2d 88 (Mo. App.1968). The court concluded that Kansas City, which was appellant, would not be allowed to attack instructions it offered. In addition, no issue with reference thereto had been preserved.

It is readily apparent that Instruction No. 1 differs materially from MAI 9.02. Instruction No. 1 was as follows:

"You are instructed that the purpose of this proceeding is to ascertain the just compensation due the owners or claimants of land through which a permanent right-of-way and temporary construction easement is taken for public use by Kansas City for the location, construction, reconstruction, maintenance, operation and repair of a public sanitary sewer as a part of said City's Pollution Control Project, Chapel Road Interceptor Sewer, all as described in Ordinance of Kansas City, Jackson County, Missouri No. 38136, passed April 17, 1970, and as shown on the map prepared by the City Engineer of said City, both of which are in evidence.

"You are instructed that the public use of the permanent sewer rights-of-way taken in these proceedings is such that Kansas City will not have the exclusive possession and control thereof, but that said easements give to Kansas City the perpetual right to enter on said lands at all times to excavate, construct, reconstruct, maintain, operate and repair sewers and appurtenances located therein, and to make connections thereto, but that the owners of said lands maintain the right to use the land upon which said easements are taken in any way which shall not interfere with the rights of Kansas City or with the proper, safe and

continuous use of the facilities to be constructed thereon.

"You are further instructed that the public use to which the temporary construction easements described in evidence are to be put is such that Kansas City will have the use of such easements during the period of construction and for three months thereafter, for the temporary storage of materials and the use of equipment and movement of a working force, without the removal of or damage to any buildings that may be located within such temporary construction easements, and with the obligation upon Kansas City to restore the surface of the ground to substantially the same physical condition that existed at the time Kansas City or its agents shall have entered upon it, and to restore all fences which may be disturbed during the course of construction with like material.

"In determining the compensation due the respective owners whose lands are taken for the public uses specified herein, you will award such owners the actual damage which may arise from the public uses as specified in the ordinance aforesaid, and for each piece of property damaged, but not actually taken by these proceedings, you will ascertain and determine the compensation therefor to be the actual amount of the damages which such property may sustain by these proceedings, if any, including all that the City may do or cause to be done, with or upon the private property so taken.

"The Court further instructs you that in assessing the just compensation aforesaid you may use your own knowledge and judgment in connection with all the evidence in this case.

"Before making and returning your verdict you may examine personally the easements to be taken or claimed to be damaged if you have not already done so.

"The Court further instructs you that the City Engineer or his assistants, shall,

when required, aid you in putting your verdict in proper form.

"You will make your verdict in writing which must be signed by each of you and return the same into court."

■■ Said instruction violates that portion of Rule 70.01 which says that "all instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Furthermore, it failed to properly instruct the jury as to the test for the measure of damages, which is the difference in fair market value before and after condemnation. This standard was approved in cases decided before MAI (State ex rel. State Highway Commission v. Leftwich, 263 S.W.2d 742 (Mo.App. 1953); State ex rel. State Highway Commission v. Mink, 292 S.W.2d 940 (Mo. App.1956)), as well as in MAI 9.02.

The trial court also erred in giving Instruction No. 2, which was as follows:

"You are instructed that in the aforesaid Ordinance of Kansas City, the City Council of Kansas City determined that the improvements to be constructed within the limits of the permanent sewer rights-of-way condemned in this proceeding will be available to serve the remaining lands of the respective ownerships through which they are taken, and that the respective owners of such lands, and their successors, heirs and grantees, shall be entitled to make sewer connections to such improvements in the manner provided by law, and in that regard, that said lands may be specially benefited by availability of the permanent sanitary sewer easements wherein such improvements may be located; but whether such remaining lands are actually increased in value, and by how much, is for you to determine. Any special benefits which you so find will accrue to each or all of the aforesaid remaining lands through which the permanent easements are taken should be deducted from the actual damages, if any, which may arise by rea-

son of the taking herein. If the special benefits equal or exceed the actual damages which you may find, then you should report no award for such tract or tracts."

■ This instruction on special benefits was contrary to MAI 9.02 and in conflict with the directions contained in the Committee's Comment thereon.

■ The city argues that condemnation proceedings under special city charter provisions are not subject to Rule 70.01 and hence the utilization of MAI 9.02 was not required. It argues that its charter provisions supersede general laws where the two conflict, citing various cases, including State ex rel. Kansas City v. Field, 99 Mo. 352, 12 S.W. 802 (1889), and City of Kansas City v. Marsh Oil Co., 140 Mo. 458, 41 S.W. 943 (1897). These cases do announce that general rule but we reject the city's contention that these cases mean that the city's condemnation cases are not subject to Rule 70.01. It is true, as previously noted, that constitutional charter cities have the right to draft their own charters and thereby legislate for themselves in lieu of being governed by statutes enacted by the General Assembly. Such charter provisions have the same force as acts of the General Assembly so long as they are consistent with state and federal constitutional requirements and statutes relating to matters of statewide concern. However, that does not mean that suits by such cities in the courts of this state are not subject to rules of practice and procedure promulgated by the Supreme Court under the rule making power conferred on it by Article V, § 5, Constitution of Missouri. Rule 70.01, relating to instructions to be given in jury trials, is applicable to this action. Consequently, the use of MAI 9.02 was mandatory and the use of Instructions 1 and 2 in lieu thereof constitutes reversible error.

■ The landowner also argues on appeal that there was no evidence in this case to show special benefits and hence no basis for that issue to be submitted to the jury. We need not consider that question at this time as we do not know what evidence will be offered on retrial. Under MAI 9.02, the city may not give a separate instruction on benefits, but it will be entitled to argue special benefits to the jury *if* on retrial there is evidence before the jury to show special benefits to this landowner.

■ In order to avoid obvious error on retrial, we call attention to the fact that at the first trial the city offered in evidence the condemnation ordinance which recited that the city council had determined that the lands of appellant herein were specially benefited. On retrial, that should not be done. The determination of special benefits, if any, to the appellant's land is for determination by the jury, not the city council, and the jury should not be told that the city council has determined that the landowner did receive special benefits.

For the reasons given, we reverse and remand this case for a new trial. In view of the decision of this court in Kansas City v. Webb, supra, appellant will have the right to elect to have her case tried before a common law jury of twelve persons. If such election is not made, the case may be tried before a jury of six freeholders pursuant to Art. VI, Sections 128 and 142 of the Charter of Kansas City.

All concur except HOLMAN, J., not participating.

## ON MOTION FOR REHEARING

## PER CURIAM.

In its motion for rehearing respondent contends that by holding that Rule 70 and pertinent MAI instructions are applicable and mandatory in charter condemnation cases, we are overruling, without distin-

guishing, earlier cases such as Kansas City v. Marsh Oil Co., 140 Mo. 458, 41 S.W. 943 (1897). It asserts this on the stated grounds that such cases hold "(1) that the charter condemnation provisions of Kansas City are a complete procedure which supersedes general laws, and (2) that condemnation proceedings by municipalities for land upon which to locate sewers is a purely local concern."

We do not agree that our decision is inconsistent with cases such as the Marsh Oil Company case which recognized the right of a charter city to make provision in its charter for condemnation proceedings to acquire lands for local purposes such as streets, parks and sewers. While the Marsh Oil Company case said, 41 S.W. l. c. 947, that: "It follows that notwithstanding the charter did not follow the civil practice, as prescribed in the code of practice, it was not for that reason out of harmony with the constitution or laws, and the special provisions thereof must control * * *," we do not interpret this language as holding that a charter city may even prescribe the form and kind of instructions to be given to the jury and the way a circuit judge conducts his court. These are things which courts must regulate. The Constitution, as recognized in the principal opinion, confers on this Court the right to promulgate rules such as Rule 70. Such authorization includes the right to make such rules applicable to cases of charter cities as well as other municipalities. If courts cannot govern such things as the taking of depositions, the admission and exclusion of evidence, the time and manner of instructing juries, etc., we would have a situation in which the rules of practice could vary from case to case and circuit to circuit, depending on local rules therein prescribed by the charter unit involved in a particular case. We reject respondent's. contention.

We have considered respondent's other points in its motion for rehearing but overrule them. Hence, respondent's motion for rehearing is overruled.